ROBERT RANKIN

*v.*

BARCROFT & Co. *et al.*

*Filed at Mt. Vernon September 25, 1885.*

1. CONVEYANCE IN TRUST *to secure creditors—preference of creditors— what creditors to·be preferred, within the terms of an agreement—whether a lien is necessary.* An agreement between a debtor and a trustee to whom the former had land conveyed to secure his creditors, provided that the trustee should sell the lands and apply the proceeds, first, to the payment of all incumbrances on the land, whether secured by mortgage or otherwise, amounting to $16,000, after which other debts were to be paid. It appeared that at the date of the conveyance and agreement, the debtor owed A $12,000 and B $4000, which debts were not incumbrances or liens on the lands, but no one else claimed such preference, and also that the debts due A and B were those intended by the parties, and that the trustee afterward, by his letter, and schedule and exhibit in bankruptcy, declared that he held the lands in trust to secure the claims of A and B: *Held,* that the fact that the debts of A and B were not liens upon the lands could not defeat the trust, and that they were entitled to be first paid out of the proceeds of the lands.

2. SAME—*subrogation—in favor of trustee or debtor paying preferred debt.* Where a person accepts time drafts drawn on him by a debtor in favor of a creditor, and takes a conveyance of land in trust, out of which to pay, first, such indebtedness, and afterward other debts, and he pays a portion of such preferred debt, he will not be entitled to be subrogated, as to such payment, to a prior lien which may be held by the preferred creditor. In such case, the person making the payment occupies the position of mortgagor or debtor, and has no preference, as to the payment made, over the other creditors secured.

3. SAME—*bankruptcy—its effect upon trust property in the hands of a bankrupt.* Upon an adjudication in bankruptcy, the debt due a trustee so adjudged, if any, on account of his trust, and his property rights in lands held by him in trust, pass to his assignee, but his duties as trustee remain unaffected by the proceeding. If any claims in favor of the trustee vest in his assignee which are prior liens upon the trust lands, it is the duty of the trustee to pay them off, and for so doing he is entitled only to the sum paid by him.

4. SAME—*declaration of trust—at what time it may be made.* Where lands have been conveyed to one without any attempt to declare a trust at the time, but a trust was intended, he may afterward, by letter or any other instrument in writing, declare that he holds the same in trust, and such dec-

laration of trust will be binding. The right to thus declare a trust in the first instance implies the right to make certain and specific a trust before attempted to be declared.

5. TRUSTEE—*speculation in respect to trust fund.* A court of equity will not permit a trustee to speculate in the subject matter of his trust. If he purchases an outstanding claim against the trust fund, the transaction will be treated as a payment only, and he will be allowed only what he paid for it.

6. PARTIES IN CHANCERY—*on bill to enforce a trust in favor of creditors—personal representations of a deceased creditor—heirs as representing debts due the ancestor—in equity.* A conveyance of land was made in trust, to secure certain creditors, one item of the indebtedness intended to be secured being described as a claim of the estate of S. Seven years afterward, certain other creditors secured, filed their bill against the trustee, to enforce the trust, making the unknown heirs of S. parties. No objection was made in the court below that the administrator or executor of S. was not made a party, but this objection was first made in the Appellate Court: *Held,* that it would be presumed the estate of S. was settled after so great a lapse of time, and that this part of the estate had vested in his heirs, in the absence of anything appearing to the contrary. In equity the title is treated as being where, in good conscience, it ought to be.

7. After the settlement of an estate the heirs of the decedent will, in equity, be treated as the owners of any uncollected claim due the estate; and if they are made parties to litigation involving the collection of such claim, the debtor will be protected in making payment to them.

8. CHANCERY PRACTICE—*submitting interlocutory decree to opposite solicitors.* Where an interlocutory decree is clearly supported by the evidence, and is in accordance with the minutes of the judge, and it is approved and adopted in the final decree, a reversal will not be made for the reason that the same was not submitted to solicitors on the other side, before being signed by the chancellor.

9. SAME—*failure to grant leave to amend cross-bill.* Where a demurrer is properly sustained to a cross-bill which shows no ground for affirmative relief, and the record fails to show that leave to amend the same was asked, or that any amendment could have been made, consistent with the facts as proved, which could have obviated the objection thereto, an objection that no time was given to amend the cross-bill is destitute of merit.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit court of Randolph county; the Hon. AMOS WATTS, Judge, presiding.

This was a bill in equity, exhibited in the circuit court of Randolph county, by Barcroft & Co., a mercantile firm, composed of Mary A. Barcroft and Samuel K. Kille, executors of the last will and testament of Stacy B. Barcroft, deceased, Jacob T. Fine, Samuel K. Kille and William M. Reink, of the city of Philadelphia, and Elizabeth Baker, Hannah Swanwick and Susannah Swanwick, executors of the last will, etc., of John Swanwick, deceased, against Robert Rankin, Thomas M., Joseph B., Jr., William M., Shadrach B. and Edward Holmes, and Achsah, Charles and Mary J. Hartzell, heirs-at-law of Joseph B. Holmes, deceased.

It is alleged that in the year 1871 certain real estate therein described "was held by one Thomas Beaver in trust, to secure to the firm of Barcroft & Co., composed of the complainants now composing said firm, and also of one George Lee, who has since retired from said firm, the payment of an indebtedness due said firm from Joseph B. Holmes, now deceased, amounting, on the first day of May, 1871, to the sum of $12,000; that on the first day of May, 1871, by agreement with the then firm of Barcroft & Co. and the said Joseph B. Holmes, the said Thomas Beaver and wife conveyed said above described lands to the said Joseph B. Holmes, deceased; that the only consideration given for said conveyance of said lands were the time drafts of the said Joseph B. Holmes, deceased, three in number, for the sum of $4000 each, payable in two, three and four years from date, respectively, all bearing date the first day of May, 1871, drawn upon the defendant Robert Rankin, and accepted by said Rankin in favor of the said firm of Barcroft & Co., and also certain other time drafts of said Joseph B. Holmes, drawn in favor of said firm of Barcroft & Co., upon said defendant Robert Rankin, and accepted by him, eight in number, all bearing date May 1, 1871, for interest upon said three first mentioned time drafts during the time the same were maturing, payable in six months, one year, eighteen months, two years, thirty

months, three years, forty-two months, and four years, respectively; that two of said time drafts, for $4000 each, payable in three and four years from date, respectively, and four of said drafts drawn for interest upon said principal sum of $12,000,—one for $240, payable in thirty months from date, one for $240, payable in thirty-six months from date, one for $120, payable in forty-two months from date, and one for $120, payable in forty-eight months from date,—remain due and unpaid, and are all held and owned by your orators now composing the firm of Barcroft & Co.; that the said Joseph B. Holmes, now deceased, was in his lifetime, to-wit, on the first day of April, 1871, and had been long prior to that time, indebted to John Swanwick, late of said Randolph county, now deceased, in the sum of $4000, the precise character and nature of which indebtedness your orators are not advised, but they here aver the same was, by the said Holmes and said Swanwick and said defendant Rankin, considered and treated as a lien upon a part of the lands hereinafter described, at that time, and that the said Joseph B. Holmes, deceased, being so indebted on the first day of April, 1871, drew his two certain time drafts of that date, for the sum of $2000 each, payable to the said John Swanwick in three and four years from date, respectively, and also eight other time drafts for interest upon said two first mentioned time drafts, during the time said first mentioned time drafts payable to said John Swanwick were maturing, payable in six months, one year, eighteen months, two years, thirty months, three years, forty-two months, and four years from date, respectively, all of which said time drafts were accepted by the said Robert Rankin on the 10th day of April, 1871, and delivered to the said John Swanwick, deceased; that said two time drafts for $2000 each, and one of said interest acceptances for the sum of $120, payable on the first day of April, 1874, one for $60, payable on the first day of October, 1874, and one for $60, payable on the first day of April, 1875, are due complainants

Elizabeth Baker, Susannah Swanwick and Hannah Swanwick, executrix of the will of John Swanwick, deceased; that prior to the said conveyance of the lands by Beaver and wife to Holmes, deceased, Holmes had executed a deed for the same and other lands to Rankin; that the lands in this deed described were to be held by Rankin in trust; that the date of this deed is February 24, 1871, the consideration mentioned in the deed is one dollar, the number of acres is one thousand three hundred and fifty-one; that the said Robert Rankin, at the time the deed from Holmes and wife to Rankin was executed, entered into a written agreement with said Holmes, to the effect that he would sell said lands in said deed described, and apply the proceeds of such sales first to the payment of all incumbrances on said lands, whether the same were secured by mortgage or otherwise, amounting at that time to the sum of $16,000, said agreement being in the nature of an equitable mortgage upon the premises described in said deed; that said claims referred to in said agreement to be first paid from the proceeds of the sale of said lands, amounting at the date thereof to the sum of $16,000, were the claims of the complainants evidenced by said time drafts; that the deed from Beaver to Holmes was obtained upon the faith of said agreement, and said time drafts accepted by said Barcroft & Co. and said John Swanwick in confidence that said Holmes and said Rankin would faithfully keep and discharge their promises, at the time said time drafts were made and accepted, and that said Rankin would sell said lands, and from the proceeds of the sale pay off the said time drafts that were then and there, both by said Holmes and Rankin, recognized as representing said sum of $16,000 that was declared to be a charge upon said lands described in said deed from said Holmes to said Rankin, and was to be first paid out of the proceeds of the sale of said lands; that both Rankin and Holmes have admitted that said time drafts were secured by said agreement, and were a first charge upon said

lands so held by Rankin, and that Rankin held said lands as trustee, only; that Rankin has been declared a bankrupt, and obtained his discharge in bankruptcy, and that the estate of Holmes is insolvent; that Rankin refuses to sell the lands, but still holds the title to the same, except eighty acres in the bill described, sold under a prior deed of trust." The bill prays that the defendants may be required to answer, but not under oath; that an account may be taken of the amount due complainants on said acceptances, under said agreement between Holmes and Rankin; that upon the taking of the account, Rankin be ordered to sell the lands described in the deed from Holmes to Rankin, except eighty acres owned by the complainant Susannah Swanwick, or so much as may be necessary to pay the amount found due complainants, and costs of suit; that upon sale being made, Rankin be ordered to pay the amount found due complainants; that upon failure of Rankin to comply with the order, and sell, the master in chancery make sale of so much of the lands as shall be necessary to pay the claims of complainants, with costs, and pay the amount due complainants, from the proceeds of the sale, and with alternative prayer for relief.

The defendants were properly brought before the court, and the defendant Rankin filed an answer, denying the truth, claiming the lands conveyed to him by Holmes in fee, and putting in issue the other material allegations of the bill.

Upon the hearing, an interlocutory decree was entered, finding the rights of the parties to be as alleged in the bill, and referring the cause to the master in chancery to take and report an account, etc. The master's report of an accounting finds that there is due the executors of John Swanwick, on their claim for principal and interest, to the first day of September, 1883, the sum of $6380; that there is due Barcroft & Co., on their claim for principal and interest, to the first of September, 1883, the sum of $12,960; that defendant Rankin has paid to John Swanwick, in his lifetime, with interest

computed to September 1, 1883, $993.10; that defendant
Rankin has paid to Barcroft & Co., interest computed on the
same to September 1, 1883, $8837.60; that defendant has
paid taxes on the land, with interest to September 1, 1883,
$1180.27, as follows:

| | |
|---|---:|
| Taxes for year 1872, paid Jan. 15, 1874, $252.81; interest on same nine years seven and a half months, at six per cent, $146.43, - - - - | $399.24 |
| Year 1872, paid Jan. 15, 1874, $94.47; interest on same nine years seven and a half months, $36.28, | 130.75 |
| Year 1873, paid June 11, 1874, $177.78; interest on same nine years three months, $98.43, - - | 276.21 |
| Year 1874, paid May 26, 1875, $127.51; interest on same eight years four months, $63.50, - - | 191.01 |
| Year 1875, paid May 19, 1876, $127.18; interest on same seven years four months, $55.88, - - | 183.06 |
| Amount taxes paid to May, 1876, - - - - | $1180.27 |

The master then finds that Robert Rankin was, on the
19th day of November, 1873, declared a bankrupt, and that
his assigns in bankruptcy sold all claims that Robert Rankin
had against these lands, for interest, taxes, and $4000 time
draft paid Barcroft & Co., on the 2d day of January, 1877,
and one John D. Rankin became the purchaser of said claims,
and assigned the same to Robert Rankin for the sum of $150,
with interest on the same to September 1, 1883, ($59.25,) and
proceeds: "I find there is due Robert Rankin on account
of these claims, computing interest to September 1, 1883,
$209.25. I also find due Robert Rankin for taxes paid on
the lands from January 29, 1877, to 1883, with interest from
date of payment, to September 1, 1883, $899.30." He also
finds Rankin entitled to $75 per annum for six years' service
as trustee, ($450,) and $300 for attorney's fees in this case,
making the total amount allowed Rankin, $1858.55. He
further finds that Rankin has collected rents amounting to
$1467.03, which leaves a balance of $391.52 due Rankin.

Exceptions were filed to the master's report by both parties. The master disallowed them. They were renewed in the circuit court, and there again disallowed. Those by defendants were as follows: "That the master erred in proceeding until the defendant could be heard in the circuit court to have the decree vacated and expunged from the record; that the master erred in admitting time drafts payable to John Swanwick, because they are not liens or evidences of incumbrance on said land, but were created and brought into existence after the written agreement; because the master erred in admitting time drafts in favor of Barcroft & Co., over the objection of defendant, because they were not liens or incumbrances of any kind on said real estate, but were created after the date of said written agreement; because the master erred in refusing to pass upon the objection of complainant's solicitor to the taking into account the pay for services prior to the year 1876, the defendant being thereby debarred from his right of excepting to the master's ruling if adverse to his interest, and because by his final report he seems to tacitly have sustained and admitted this objection without defendant having an opportunity to except to his said action; because the master erred in finding that Robert Rankin was declared a bankrupt, and that his assignees had sold all claims that Robert Rankin had against these lands for interest, taxes, and $4000 paid Barcroft & Co., on the 27th day of January, 1877; because there was no evidence before the master from which he could find any such facts; because the only matter in the master's record and before the master was the complainant's objection, and no evidence whatever was before said master on which to sustain such finding; that the master erred in finding that John D. Rankin became the purchaser of the claims of Robert Rankin against said trust estate, and assigned the same to Robert Rankin for $150, and in finding that sum, with interest thereon, as the only sum due said Rankin; that there is no evidence before said master on which said finding could

be sustained; that there was no evidence introduced before said master relating to said matter, and because the defendant had a perfect right and legal authority to purchase at said assignee's sale, or from the purchaser at said sale, and as to the price he paid at said sale he occupies the relation of a stranger; because the assignee of said bankrupt never could have any interest in or control over the trust confided by said instruments in Robert Rankin; because the pretended decree under which the master was taking said account gave no direction to said master to make any such distinction, or to take into consideration any such proceedings in bankruptcy, and because the master's action is wholly unauthorized by said pretended decree, or by any evidence before him, as shown by his report of the evidence; because the master finds that prior to January 29, 1877, Rankin paid for taxes on said claims, etc., $11,010.97, and allows him for said sum only $209; because the master erred in omitting the amounts found to have been paid by defendant prior to January, 1877, and in omitting the amount due defendant for his personal services prior to said date; because, as shown by the master's report, there was no evidence to sustain said finding, in whole or in part; that the only evidence that said Rankin was discharged, is the certificate of discharge, showing that he was released from all debt existing prior to November 19, 1873, and that there are no data in any of said testimony on which said master can fix his assumption that January, 1877, was or could be of any importance whatever; that said assignee's sale was not a sale made by defendant Rankin as trustee, and his purchase was not a purchase of the trust property the dealing in which by the trustee is prohibited by public policy; because the master erred in not finding for defendant the amounts of his advances, making a total of $13,035.27, instead of the sum of $1858.55 which has been allowed in the conclusions of said master's findings; because evidence would justify the finding a credit of the sum of $13,035.27,

while there is a total absence of evidence to justify the find-
ing of $1858.27."

The court decreed that the master's report be approved,
and that so much of the lands described in the bill as should
be necessary to pay the amounts so found due, be sold by
the master in chancery. Upon this decree the defendant
Rankin prosecuted a writ of error from the Appellate Court
for the Fourth District, and that court, on hearing, affirmed
the decree of the circuit court. The present writ of error is
prosecuted to reverse that judgment.

Mr. J. PERRY JOHNSON, Mr. HENRY E. MILLS, and Mr. A. G.
GORDON, for the plaintiff in error:

The administrator or executor of Albert W. Senter should
have been made a party. *Lynch* v. *Rotan*, 39 Ill. 14; *Smith*
v. *Rotan*, 44 id. 506; *Ryan* v. *Lynch*, 68 id. 160; *Stephenson*
v. *Mathers*, 67 id. 123; *Moore* v. *Munn*, 69 id. 591; *Alexan-
der* v. *Hoffman*, 70 id. 114; *Packwood* v. *Gridley*, 39 id. 388;
*Hopkins* v. *Roseclare Lead Co.* 72 id. 377; *McGraw* v. *Bayard*,
96 id. 147; *Gudgel's Admr.* v. *Ketterman*, 108 id. 50; *Manu-
facturing Co.* v. *Wire Fence Co.* 109 id. 71.

The writing should, with reasonable certainty, show who the
beneficiary is, and must so define his interest that a fraudu-
lent party may not be substituted. The words, "existing
incumbrances on said property," even in the light of the tes-
timony, do not show who are the beneficiaries first secured.
*Ricketson* v. *Ricketson*, 19 Cal. 330; *Booth* v. *Baun*, 9 Conn.
286; *Gilman* v. *Moody*, 43 N. H. 239; *Hunt* v. *Robinson*, 11
Ohio St. 232; *Gill* v. *Torney*, 12 id. 38; *Bramball* v. *Flood*,
41 Conn. 68; *Shaw* v. *Lord*, 12 Mass. 447.

The purchaser at an assignee's sale takes such interest
as the bankrupt had prior to the proceedings in bankruptcy
against him, and stands on the same footing with a purchaser
at an execution sale. *Steadman* v. *Taylor*, 17 Bank. 284; *Carr*
v. *Fearington*, 63 N. C. 560; *Anderson* v. *Miller*, 7 S. & M. 590.

The purchaser at a bankrupt sale takes no higher right than the bankrupt himself had. *Baker* v. *Vining,* 30 Me. 121.

Rankin had the right to purchase at the sale made by his assignee. *Phelps* v. *McDonald,* 2 McArthur, 380; *Arnold* v. *Leonard,* 12 S. & M. 258.

Personal assets do not vest immediately in the heir, but in the executor or administrator. 2 Blackstone's Com. 420, note 38; Williams on Executors, note 527; Story on Eq. Pl. sec. 170.

The manner in which the interlocutory decree was prepared is obnoxious to good chancery practice. *Stevens* v. *Coffee,* 39 Ill. 148; *Schneider* v. *Siebert,* 50 id. 285.

Mr. WILLIAM HARTZELL, and Mr. JAMES J. MORRISON, for the defendants in error:

It is competent for a party, after the legal title to real estate has been vested in him, to make a written declaration that he holds such title in trust for another. Parol evidence is competent to show whose name should have been inserted in a blank in a declaration of trust, as *cestui que trust.* *Fast* v. *McPherson,* 90 Ill. 497.

The want of proper parties can not be taken advantage of for the first time in the Supreme Court, unless it appears that parties are omitted whose rights are so connected with the subject matter of the suit that a final decision thereof can not be made without materially affecting their interests. *Conwell* v. *Watkins,* 71 Ill. 488.

A court of equity, independent of any agreement, would consider money advanced by a trustee, to purchase in an outstanding title, as an advance for the benefit of his *cestui que trust,* and not for his own use, giving him a lien on the property until he has reimbursed the advancement. *King* v. *Cushman,* 41 Ill. 31.

Trustees and others sustaining a fiduciary and confidential relation can not deal on their own account with the thing or

the persons falling within the trust or relationship. *Dennis v. McCagg,* 32 Ill. 429.

A trustee, executor or assignee can not buy up a debt or incumbrance to which the trust estate is liable, for less than is actually due thereon, and make a profit to himself; but such purchase inures for the benefit of the trust estate, and the creditors, legatees and *cestui que trust* shall have all the advantage of such purchase. 1 Perry on Trusts, sec. 428.

In foreclosing a mortgage, where junior mortgagees and incumbrancers are parties defendant, a cross-bill is unnecessary unless some relief other than a foreclosure is sought. The foreclosure of the prior mortgage affords relief to all subsequent incumbrancers who are made parties, and have the right to participate in the distribution of the surplus. *Soles v. Sheppard,* 99 Ill. 616.

By the operation of the Bankrupt law the assignee becomes vested with all the property and rights that the bankrupt had at the time of the assignment. *Talcott v. Dudley,* 4 Scam. 435; *Vairin v. Edmonson,* 4 Gilm. 124; *Griswold v. McMillan,* 11 Ill. 590.

Where a decree is entitled as of a certain term of court, and is so certified in the record, this will be conclusive evidence that the decree was made in term time, and not in vacation, and the record can not be impeached. *Mason v. Patterson,* 74 Ill. 191.

Mr. Justice Scholfield delivered the opinion of the Court:

The errors assigned will be considered under the points and in the order discussed in the argument of plaintiff in error.

In the written agreement of Rankin and Holmes it is recited that the property has been conveyed to Rankin upon these trusts, namely: "The property is to be subdivided and sold, or otherwise disposed of by Rankin, in such manner and quantities, on such terms, and at such times and prices, as he shall think best, and the funds and proceeds arising from

such disposition and sale of the said property shall be applied to the following purposes, to-wit: First, to the extinguishment and satisfaction of the existing incumbrances on said property, whether by way of mortgage or otherwise, amounting to some $16,000 at the date of these presents; secondly, to the payment of $30,000, on account of the running account current, to said Rankin from said Holmes; thirdly, to the payment and liquidation of a claim of the estate of Albert W. Senter against the said Holmes, provided said claim shall not exceed the sum of $10,000; and fourthly, the net balance of said proceeds, if any there be, after discharging the above incumbrances and debts, and paying the costs, interest, and expenses of executing this trust, shall be divided equally between the said Rankin and the said Holmes." The circuit court, in the interlocutory decree, found and decreed that the respective claims of Barcroft & Co. and the executors of John Swanwick were embraced in and composed the said sum of $16,000 declared in this agreement to be a first lien on the lands. Plaintiff in error contends that the evidence does not sustain this finding, and this is the first point made in his argument as a ground of reversal.

It may be conceded, as contended by counsel, that there is no evidence showing that these claims were such that they could be enforced by virtue of a vendor's lien, or that they were in judgment, or secured by mortgage on the land,—in short, that they were not, in fact, existing incumbrances on the land; still, there is no other indebtedness shown that could possibly have been intended, and no other incumbrances on the lands. No other creditors are claiming this $16,000 prior lien, and, from the terms of the agreement, the second and third preferences are only to be satisfied in the order stated. Neither of them can, upon any reasonable construction, be advanced and substituted for the first preference. But the evidence is full and complete that Holmes and Rankin intended the claims of Barcroft & Co. and John Swanwick to

be paid under this first clause. The claim of the former was then $12,000, and that of the latter $4000, making the total $16,000. In the most favorable view that can be taken for Rankin, the parties were simply mistaken in assuming that these claims were existing incumbrances on the lands; but in the absence of intervening rights of third parties this mistake was of no consequence. A court of equity would have rectified it on bill filed for that purpose by Barcroft & Co. and the executors of Swanwick. What a court of equity would compel them to do, they could, of course, do of their own volition. If there had been no attempt before to declare a trust, Rankin might have declared it by letter, or by any other instrument in writing, declaring that he had held the lands in trust. (Perry on Trusts, 1st ed. 83.) And the right to thus declare a trust in the first instance, necessarily implies the right to make certain and specific a trust theretofore attempted to be declared. (*Fast et al*. v. *McPherson*, 90 Ill. 497.) Rankin went into bankruptcy in 1873, and in the schedules and exhibits filed by him on that occasion he clearly and emphatically declared and swore that he held these lands in trust, *first*, for the payment of the claims of Barcroft & Co. and John Swanwick, under the agreement between him and Holmes, and afterwards as further provided by that agreement. And in letters to Barcroft & Co., of a prior date, he also distinctly and fully acknowledged the trust.

The next ground of reversal urged is, that the administrator or executor of Albert W. Senter was not made a party. This objection was urged for the first time in the Appellate Court. The unknown heirs at law of Albert W. Senter were made parties by publication, and to the sufficiency of the notice to them no objection is pointed out by counsel or perceived by the court. We may therefore assume that the heirs-at-law of Senter are properly before the court.

The preference in the third clause of the agreement between Holmes and Rankin is of a claim of the estate of Albert W.

Senter. Plainly, this assumes that Senter is dead, but does not attempt to declare whether the estate has been settled, or whether Senter died testate or intestate. The word "estate," as used, means simply that this claim is one to be collected and added to the mass of his estate,—or, in other words, that it constitutes part of his estate. The period of more than seven years having intervened between the execution of the instrument and the filing of the bill, we must presume the estate had been settled, and that this part of it had vested in the heirs-at-law, nothing appearing to the contrary. In equity the title is treated as being where, in good conscience, it ought to be, and we think to have made the present objection available, plaintiff in error should have urged it in the circuit court, and there affirmatively shown that the estate of Senter had not been settled. We are of opinion, under the circumstances, that the only interest to be protected under this third clause was that of the heirs-at-law of Senter, and that plaintiff in error will be amply protected by the decree in making payment to them.

The next objection taken to the decree is, that Rankin is not allowed sums paid by him before the filing of the bill to Barcroft & Co. and the executors of Swanwick, amounting to some $9830.70. If he were decreed to again pay this amount, the position would be tenable; but he is not. The decree only directs a payment of the balance found due on those claims. By the first clause of the agreement between Holmes and Rankin, we have seen Rankin accepted the trust of paying the claim of Barcroft & Co., then amounting to $12,000, and that of John Swanwick, then amounting to $4000. By his previous acceptances of the time drafts, Rankin became legally liable to pay these sums, and his acceptance of the trust made them payable before anything else, out of the proceeds of the sales of the lands. When, therefore, he had paid $9830.70 of the amount, he only owed that much less, and he was only obliged to sell less, by that amount,

of the lands conveyed to him in trust. But as to the residue of the indebtedness the trust still existed. The doctrine of subrogation could have no application, for his position is precisely that of a mortgagor paying part of his debt secured by the mortgage. It would be both unjust and absurd that by making a partial payment he could be preferred, as to the balance of the claim, over the mortgagee.

When Rankin went into bankruptcy, the debts due him, if any, on account of this trust, and his property rights in these lands, went to his assignee. His duties as trustee were unaffected by the proceeding. If any claims in favor of Rankin vested in his assignee upon his becoming bankrupt, which were prior liens upon these lands, which we very much doubt, it is quite obvious it still remained the duty of Rankin, as trustee, to pay off and remove them, and for doing that he would be entitled to precisely what he paid out. If he had a prior lien which passed to the assignee, he thereafter occupied towards it the relation of a stranger. It then stood as a debt to anyone else. No principle is better settled than that a court of equity will not permit a trustee to speculate in the subject of his trust. If he buy in outstanding claims, his purchase is treated as a payment only, and he is allowed just what he paid out. (Perry on Trusts, 1st ed. sec. 428.) But this is in conformity with the ruling below. We are satisfied that if there be any error in the accounting, it is in favor of Rankin, and not to his prejudice. It is, to our minds, very questionable whether he should, as against the defendants in error, have been allowed any compensation for his services.

Objection is urged that the interlocutory decree was not submitted to counsel for plaintiff in error, and that it was prepared in vacation. The interlocutory decree, we have before seen, was authorized by the evidence. It was in conformity with the minutes of the judge, and has since been approved and adopted by the final decree. Under these cir-

cumstances, it was not indispensable that it should have been submitted to opposite counsel for their approval, if, in any event, that would have been necessary.

The objection that no time was allowed to amend the cross-bill, is destitute of merit.

The demurrer to the cross-bill was properly sustained. No case was stated showing any ground of affirmative relief on behalf of the plaintiff in error. It does not appear that leave to amend the cross-bill was asked, or that any amendment could have been made thereto, consistent with the facts as proved on the hearing, which would have removed the objection to it.

The errors assigned raise other points, but inasmuch as nothing is said in argument in their support, we are authorized to assume that they are abandoned.

We have gone through the entire record with much care, and we feel thoroughly satisfied that there is no reason for reversing the decree of the circuit court. It favors the plaintiff in error at least so far as he has a right to claim that it should. It does him no substantial injustice.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*