No. 9426.

CONKLIN ET AL. *v.* SHAW.

1. EQUITY—*Forfeiture.*  Equity will not enforce a forfeiture.
2. TRUSTEE—*Advancements—Presumptions.*  One holding in his own right an interest in a contract for the purchase of land, and as trustee, other interests, making payments on account of the purchase, is presumed to make such payments to preserve the trust estate.
3. *Advancements—Remedies of Trustee.*  Shaw held a contract for the purchase of lands. He made one payment, and the contract' provided for ten annual payments thereafter, the last accruing in October, 1915. He assigned this contract to plaintiff, who issued a declaration of trust, reciting the contract of purchase, and that each of defendants was entitled to an undivided tenth thereof, subject to the pro-rata payment of the unpaid purchase money, but that if either of them should default in any payment, and such default should continue for thirty days after written notice, the defaulting party should forfeit his interest. Plaintiff having made full payment of the purchase money required under the original contract, brought her bill against defendants to quiet title, alleging that each of them had' made default in the payments required of them, and continued such default for thirty days after written notice. *Held* that the payments made by plaintiff

were to be considered as advancements; that her remedy was by foreclosure of defendants, unless they should return the advancements with interest, within some reasonable time to be fixed by the court; or by a suit in partition. The court declined to award plaintiff the relief demanded and the decree in her favor was reversed.

4. NOTICE—*Error.* The defendants holding equitable interests in a contract for the purchase of lands, was required to pay, annually, their ratable shares of the purchase money as it became due on the contract, and it was provided that in case of default, continued after notice in writing, the one so defaulting should forfeit all interest. The evidence as to notice of default examined, and held insufficient to sustain the claim of forfeiture asserted by plaintiff.

5. APPEAL AND ERROR—*Documentary Evidence—Effect in Court of Review.* The findings of the trial court upon evidence, the essential part of which is documentary, do not bind the court of review.

6. CONTRACT—*Construed.* Plaintiff held the contract of a railway company to convey to her certain lands, upon the completion of ten annual payments of amounts differing in different years. She was under duty to make these payments, and defendants, each being entitled to an interest in the purchase, were under duty to re-emburse to her their respective ratable proportion of her payments. Plaintiff brought her action to quiet the title and declare the interests of defendants 'forfeited, 'for default in the payment of each and every one of the sums due plaintiff. Defendants complaining that they had never been notified of the amounts paid by plaintiff,· or the amounts in which they were liable to her, it was contended by plaintiff they should have made their payments directly to the railroad company. *Held* that such payment was not contemplated by the contract, and doubted if such course of action was practicable, inasmuch as defendants were not parties to the contract with the railroad company nor recognized by it, as in any way interested therein.

*Error to Logan District Court, Hon. H. P. Burke, Judge.*

Messrs. DOUD & FOWLER and Mr. GEORGE W. WILBUR, for plaintiffs in error.

Messrs. MUNSON & MUNSON, for defendant in error.

Garrigues, C. J.

THIS action was brought by Emma F. Shaw, defendant in error, as plaintiff below, against H. O. Conklin, Emma Russell and G. A. Bergtold, defendants below, plaintiffs in error here, to quiet title to a section of land in Logan County.   Judgment was for plaintiff, and defendants bring the case here on error.   We will refer to the parties, as in the lower court, as plaintiff and defendants.

October 31, 1905, the Union Pacific Railroad Company, through its land department, entered into a land contract with one Edward Richardson, agreeing, in consideration of $1,588.50, to sell him the land in controversy.   He made a cash payment of $158.85, and the remainder, $1,429.65 with interest thereon, was to be paid in ten annual payments, commencing October 31, 1906, and ending October 31, 1915.   There was a provision that, in case of default in making any of these payments, the land should revert to, and the title reinvest in, the company and all that had been paid thereon should be forfeited to the company and treated as rent for the use of the land.

Sometime prior to March 2, 1906, one Willis Shaw, husband of plaintiff, negotiated with Richardson for the purchase of this contract in consideration of $1,747.35 which was paid to him in cash by Shaw.   The three defendants each agreed with Shaw to take a one-tenth interest with him in this contract, and each defendant paid Shaw $175.00, being his *pro rata* share of one-tenth of the purchase price that Shaw paid Richardson for the assignment, and, on March 2, 1906, Shaw made a written declaration of trust containing *inter alia* the following:

"It is further understood that as soon as said fund has been secured," ($175.00 from each of the three defendants) "I shall purchase said lands in my own name as trustee and hold such title thereto as may be acquired for each and all of the parties who may advance money therefor, and subject to such direction and order as they shall hereafter give me by a majority vote.   The holders of said interests being

entitled to one vote for each one-tenth interest of said lands held by them."

March 5, 1906, Richardson duly executed the formal printed assignment to Shaw, and delivered the contract to him. March 23, 1906, the company acknowledged Shaw as the assignee of Richardson, and the holder and owner of the contract, and the assignment was duly approved by the company and recorded in its office. Defendants' equitable interests in the contract were unknown to, and defendants were not recognized by, the company, as having any interests therein. Under their agreement with Shaw, he was to make the subsequent payments on the contract, and pay the taxes, and notify defendants, and they were each to repay to him their *pro rata* share upon being notified of the amount. Shaw accordingly made the 1906-7-8 payments to the company on the contract, and paid the taxes on the land, and sent defendants notice of their *pro rata* share which they refunded to him. This was the manner of procedure as long as he owned the contract. In 1908, Shaw went into voluntary bankruptcy, but prior thereto, on August 21, 1908, assigned the contract on the second printed form on the back thereof to his wife, Emma F. Shaw, which assignment was also duly approved and recorded by the railroad company August 26, 1908, and thereafter the company recognized and acknowledged plaintiff as the sole owner of the contract and accepted all the payments from her, and October 26, 1915, executed to her a warranty deed.

November 20, 1909, Mrs. Shaw made a declaration of trust which was duly recorded, and, among other things, recites, that the Union Pacific Railroad Company on October 31, 1905, contracted to sell the land to Richardson, and, March 6, 1906, Richardson assigned the contract to Willis Shaw, and, March 21, 1908, Willis Shaw assigned the contract to his wife, Emma F. Shaw, and further recites:

"Whereas, G. A. Bergtold, H. O. Conklin and Emma Russell have paid for and each own an undivided one-tenth of said contract and hold such interests under declarations of trust from Willis Shaw, Trustee, dated March 2, 1906.

Now, therefore, this instrument is to declare that I hold title to said contract and the lands above described when conveyed to me, in trust, for the following named persons in proportions as follows, to-wit: for G. A. Bergtold, one-tenth; for H. O. Conklin, one-tenth; for Emma Russell, one-tenth, and for myself, Emma F. Shaw, seven-tenths, but such interests are subject to the *pro rata* payment of the unpaid purchase money and other terms of said contract.

And it is further understood and agreed that if any or either of said parties shall make default in any payment of his or her share, as it becomes due under said contract, and such default in payment shall continue for thirty (30) days after written notice, then such defaulting party shall forfeit all his or her right, title and interest in and to said contract, and in and to the payments then made thereon to that time. The others in interest, or either of them, may make such payment and thereupon such defaulted interest shall belong to those paying for the same, in proportions of their respective payments on such defaulted payment."

Mrs. Shaw, after receiving the deed, began this action against defendants to quiet title in her to the land. The complaint is in the usual form, that she is the owner in possession of the land, and that defendants each claim some right, title or interest therein, which is unfounded. Defendants allege that, about March 2, 1906, they each acquired a one-tenth interest in the contract, and they plead the declaration of trust made by plaintiff November 20, 1909, and allege that they at all times have been ready and willing to pay their *pro rata* share, but were unable to obtain from plaintiff a statement of the amount due from them to her. They then allege that they never received any notice of default whatsoever, and that they each own a one-tenth interest in the land. They pray that they be allowed to make such payments to plaintiff as are due or have become due to her on account of her payments on the contract, and the taxes, and that they each thereupon be declared the owner of an undivided one-tenth interest in the land. The reply alleges that, on March 6, 1906, Willis

Shaw purchased the contract from Richardson for the sum of $1,747.35, and admits that defendants each acquired a one-tenth interest with Shaw in this contract; that at the time of the purchase of the contract by Willis Shaw from Richardson there were deferred payments thereon as follows:

| In 1906 | $ 85.78 |
|---|---|
| 1907 | 243.43 |
| 1908 | 160.20 |
| 1909 | 225.12 |
| 1910 | 215.58 |
| 1911 | 206.70 |
| 1912 | 196.22 |
| 1913 | 186.68 |
| 1914 | 178.08 |
| 1915 | 168.54 |

that defendants' interests were taken subject to the *pro rata* payment by each of a one-tenth of these annual payments due under the contract to the company, together with one-tenth of the taxes; that she became the owner of the contract by assignment from Willis Shaw to her in 1908; that, after she became the owner of the contract, she paid all the deferred payments and taxes, and, in 1915, the company executed and delivered to her a warranty deed to the land. She then alleges that, in 1909, and each and every year thereafter, defendants and each of them defaulted and made no payment whatever, and that they were each served with written notice of their default in the first year in which it occurred, but neglected and failed to make any of the payments.

In 1906-7-8-9 the trustee made the payments to the company on the contract, and the taxes, and notified the defendants of their *pro rata* share, which they remitted to the trustee. After Mrs. Shaw became trustee she refused to give defendants any statement of the amounts due, though often requested to do so, and defendants made no further payments to her. In December, 1909, one of the defendants wrote to her as follows:

"In regard to the several talks that we have had over the telephone in reference to my one-tenth interest in all of Section 1, Township 11, Range 52, Logan County, Colorado, of which you are the trustee, I hereby notify you that I am ready to pay my portion of the payment that was due the railroad company in October, and I also hold for Mrs. Russell money to pay her one-tenth interest. I would respectfully ask you to call at my office and bring the railroad contract, together with the receipts, at which time I am ready to pay the amount for each of us. I must insist that you produce the receipt from the railroad company and also the tax receipts for the year 1908."

September 8, 1910, he wrote her again:

"I herewith notify you that myself and Mrs. Russell are ready to pay our portion of the installment which falls due in October, 1910, on all of Section 1, Township 11, Range 52, Logan County, Colorado. I wish to say that I still request that you bring in to me the receipts showing everything paid to the railroad company on both sections, together with the tax receipts for 1908 and 1909. As you are trustee of this section, I will request that you bring these papers in. Our money is ready at any time, the same as I notified you on December 16, 1909."

December 9, 1911, he again wrote her:

"This is to notify you thatI am ready to make my payment of my interest in all of Section 1, Township 11, Range 52, Logan County, Colorado, and also make the payments for Mrs. Emma C. Russell."

Defendants were asking for statements, and offering to repay plaintiff, and she refused to furnish them with any statement, and testified that she "never at any time furnished these people with a statement of the amount due."

Garrigues, C. J., after stating the case as above, delivered the opinion of the court:

1. Plaintiff is asking a court of equity to aid her in acquiring defendants' property by forfeiture, as it would do by granting her the relief asked in this case. Defendants each paid for and owned an undivided one-tenth interest in the

contract, and the declaration of trust provided that in case they failed to make the subsequent payments, and the default continued after she had given them 30 days notice in writing, they were to forfeit to her, and she was to hold and own, their interests in the contract and the land. If, in an action to quiet title, plaintiff can hold defendants' interests, it is because of their failure to perform a condition subsequent, namely, their default in refunding the payments to her. These people were engaged in a joint venture, and the relationship of trustee and *cestuis que trustent* existed. She was not a vendor; she never owned defendants' interests in the contract and land except as she claimed them by forfeiture. Her contention is that defendants' interests belong to her because they did not refund, after 30 days notice, the money she advanced on the contract, and she asks the court, in an action to quiet title, to aid her in enforcing the forfeiture. A court of equity will not enforce a forfeiture.

Story's Eq. Vol. 2, paragraph 1319, 14th Ed.; *Keller v. Lewis,* 53 Calif. 113; *Crane v. Dwyer,* 9 Mich. 350, 80 Am. Dec. 87; *M. & C. R. R. Co. v. Neighbors,* 51 Miss. 413, 421; *Warner v. Bennett,* 31 Conn. 468, 476; *Smith v. Jewett,* 40 N. H. 530, 534.

2. The forfeiture claimed in the declaration of trust could only be enforced through some legal procedure. Plaintiff voluntarily, when she accepted the assignment of the contract and made the declaration of trust, assumed the burden, the same as Willis Shaw, of making the whole payment each year to save the property, and her own interests, and being reimbursed by defendants, and was protected by a lien on the land for all the money she advanced, and interest thereon. The payments made by plaintiff for defendants should have been treated by the court as advancements made by the trustee. If, as tenants in common, she was obliged to make these payments on the contract in order to save her own estate, that is no reason why she should be entitled to enforce a forfeiture of their interests. She is presumed to have made such payments to preserve the trust estate. The court should have applied

the rule of compensation for disbursements. A return of the money she advanced, with interest, would be just compensation. She had a remedy by foreclosing, under the declaration of trust, the rights of the defendants in the contract and land unless they made the payments due her within some reasonable time to be fixed by the court. Or, it seems to us, she could have brought a suit in partition, in which her rights would have been protected for any payments she made in preserving the common estate. Instead of this, she usurped the power of the court, and claimed to own the interests of the defendants, and asked a court of equity to aid her in holding it. *Trice v. Comstock,* 121 Fed. 620, 622, 57 C. C. A. 646, 61 L. R. A. 176; *Warren v. Adams,* 19 Colo. 515, 525, 36 Pac. 604; *Hallack v. Traber,* 23 Colo. 14, 16, 46 Pac. 110; *McPherrin v. Fair,* 57 Colo. 333, 141 Pac. 472; *King v. Cushman,* 41 Ill. 31, 89 Am. Dec. 366; *Davis v. Hamlin,* 108 Ill. 39, 49; *Rankin v. Bancroft,* 114 Ill. 441, 3 N. E. 97; *Brantly v. Kee,* 58 N. C. 332, 333; *Hansbrough v. Peck,* 5 Wall. 497, 18 L. Ed. 520.

3. It may be, in the action to quiet title, that the court could have ascertained the amount due plaintiff from each defendant, and given each a reasonable time to make the payment, and provided, if it was not paid by a day fixed, that any defendant failing to pay the amount should be debarred from asserting any further interest in the land, as prayed in the answer, or may do so now, but it was not justified in entering a decree giving defendants' interest in the land to plaintiff upon repayment by her to them of what they had paid.

4. The evidence fails to show that the notice was given. The essential part of the evidence is documentary, and much of it by depositions, and the findings of the trial court on these matters is not conclusive on us. We are in as good a position to judge of such evidence as the trial court. Mrs. Shaw does not claim that she served the notices personally. She claims they were prepared and served for her by one Ledbetter, and on this point testified:

"I did not read it." (The notice) "I never saw it. I do not know of my own knowledge that notice was sent. I did not see them posted" (mailed). "I heard them dictated, partially, and then I left when he" (Ledbetter) "was about half through. I do not know whether these notices were ever mailed or not."

Ledbetter testified he prepared and mailed the notices for her, and, if he did so, the presumption would be that they were received, but this presumption was overcome by the unqualified denial of each defendant that he ever received any notice whatsoever. There is no claim that notices were delivered in person or sent by registered mail.

5. It is claimed that defendants should have made their payments to the railroad company on the contract, and that each should have paid to the county treasurer one-tenth of the taxes each year. This was not contemplated by them, and it is doubtful if they they could have done so. The company did not know or recognize them as parties to the contract. Its contract was with Richardson, and it recognized the assignment from him to Willis Shaw, and from Willis Shaw to plaintiff. It neither had notice of, nor recognized any interests therein belonging to defendants. They were strangers to the contract and to the land so far as the company was concerned. It received payments from the party who was legally bound to make them, and made the deed to her. It could have made the deed to no one else. The railroad company never could have declared a forfeiture and cancelled the contract as to defendants, for nonpayment by them, because they were not parties to the contract. It was the agreement, when they made their initial payment of $175.00 to Willis Shaw, that he was to make the subsequent payments on the contract, and they were to refund to him, and, under her declaration of trust, plaintiff is as much bound by this agreement as Willis Shaw. The amount due each year was different. Mrs. Shaw refused to give them the amount due, and if a defendant by some means could have ascertained the amount each year and tendered one-tenth of the payment to the

company, and one-tenth of the taxes to the county treasurer, it would have been refused.

Judgment reversed and cause remanded.

Mr. Justice Bailey and Mr. Justice Allen concur.