## No. 11,665.

### CORNUCOPIA LEASING, MINING & MILLING CO., ET AL. *v.* KENNEY, ET AL.

Decided September 12, 1927.

Action to quiet title and for injunctive relief. Judgment for plaintiffs.

### *Reversed.*

1. PLEADING—*Complaint—Sufficiency.* Complaint in an action to quiet title and for injunctive relief held sufficient, and to state but one cause of action.

2. APPEAL AND ERROR—*Pleading.* Denial of defendants' motion to separately state causes of action in the complaint, held without prejudice because, if the complaint contained more than one cause of action, they were separately stated.

3. QUIETING TITLE—*Pleading—Possession.* In an action to quiet title, if the defendants allege title and possession in themselves, they cannot be heard to say that plaintiff cannot maintain the action because of being out of possession.

4.  APPEAL AND ERROR—*Admission of Evidence.*  Objection to the admission in evidence of a certified copy of a report because not the best evidence will not be considered when made for the first time on review.

5.  ESTOPPEL—*Evidence.*  In an action to quiet title, evidence reviewed, and held to sustain a plea of estoppel.

6.  EQUITY—*Forfeiture.*  The rule is that equity will never enforce a forfeiture.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. WAYNE A. GUNKLE, for plaintiffs in error.

Mr. WILLIAM C. KIRK, for defendants in error.

*En Banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THE defendants in error, herein designated as the plaintiffs, brought this suit against plaintiffs in error, herein referred to as the defendants, to remove alleged clouds from, and to quiet title to, certain mining claims and property, and for injunctive relief. Trial to the court; findings and judgment for plaintiffs; and defendants prosecute error.

It appears that on December 24, 1915, the plaintiffs, Kenneys, were the owners of the Reform Lode Mining and Mill Site Claim, and also the Ten Stamp Mill located on the Reform Mill Site, and all buildings, tramways, etc., located on the property described in the complaint. On that date the plaintiffs entered into a lease agreement with one O. O. Kendall, which was thereafter assigned by him to the defendant, the Cornucopia Leasing, Mining & Milling Company. This agreement was filed for record and recorded in the office of the county clerk and recorder of Gilpin county, on January 3, 1916.

Shortly after the assignment the Cornucopia Company entered into possession of the premises described in the lease agreement.

About April 23, 1919, the plaintiffs executed a deed conveying the premises to the Cornucopia Company, and placed the same, together with the lease agreement, in escrow with The International Trust Company of Denver, to be by it delivered to the company "when and if said company should fully comply with the terms and conditions of said lease agreement."

The escrow agreement contains this clause: "but should the said company by its failure to comply with the said agreement or by its voluntary surrender thereof forfeit its right under said contract then the said deed and contract shall be delivered back to the said Kenneys."

It further appears that the Cornucopia Company became indebted to the Stearns-Roger Manufacturing Company for a part of the machinery and equipment on the property supplied by said Stearns-Roger Company, and that it recovered a judgment against the Cornucopia Company for the sum of $7,218.83; that upon the judgment an execution was issued and delivered to the sheriff of Gilpin county; that the sheriff levied upon the entire property, advertised the same for sale and sold the same on May 12, 1925, to defendant Gunkle, trustee, for the amount of the judgment; that Gunkle purchased the property as trustee for several parties some of whom were stockholders, directors or other officers, or in some way connected with the Cornucopia Company.

There was evidence tending to show that the Cornucopia Company had made default and forfeited its rights under the lease agreement for certain years, including 1924, in that the company had not worked or caused to be worked at least twenty-five shifts a month averaging at the end of the year of the years mentioned, and, in fact, had performed only a nominal amount of work under the agreement; that at the time of the institution of this suit the company was not operating the property and had not

pretended to operate it during any of the years from 1919 to 1925, inclusive, and that it had abandoned the property save for keeping a watchman there. There was also evidence tending to show that it had forfeited all of its rights in and to the property, and had so forfeited them prior to May 12, 1925, when the sheriff issued a certificate of sale to Gunkle.

The plaintiffs claim that they are still the owners of the property and entitled to the return of the deed deposited in escrow with the trust company, and entitled to the possession of the property to the exclusion of the defendants; that defendants have cast a cloud upon the title of the premises by virtue of the sheriff's sale and by virtue of being in possession of the premises to the exclusion of the plaintiffs, and in refusing to permit the trust company, as escrow holder, to return to the plaintiffs the deed and lease agreement.

The defendants filed a motion to separately state the alleged several causes of action, which was overruled. They then demurred to the complaint which was also overruled. Thereafter, defendants answered, setting up, among other things, that the plaintiffs had knowledge of all the defendants had done, in the way of purchasing the property at sheriff's sale, and had acquiesced therein; that plaintiffs were estopped to show any breach of contract occurring prior to May 12, 1925, at which time plaintiffs consented to the sale of the contract and all rights thereunder; that defendants had paid out, with the full knowledge and consent of the plaintiffs, for said contract and other property and for taxes thereon, approximately $9,000 since May 12, 1925.

1. Defendants' motion to separately state the alleged several causes of action was properly denied. We do not think that several causes of action are stated in the complaint. While the plaintiffs insist that the action is not one to quiet title, we think it is an action to remove alleged clouds from their title, and also to quiet it, and that the trial court properly so held. There is only one cause

of action stated. If the facts stated in the complaint are true, they were entitled to the injunctive relief prayed for, and aside from that the only relief they could obtain would be to remove the alleged clouds and have the title quieted in them. However, if the complaint contains more than one cause of action, they are separately stated and the defendants were not prejudiced by the court's ruling. *Olson v. Harvey,* 68 Colo. 180, 183, 188 Pac. 751.

2. The court was right in overruling the demurrer. Defendants claim that their demurrer should have been sustained, because if this is an action to quiet title, plaintiffs should have been in possession of the premises and that as the complaint alleged that defendants were in possession, plaintiffs should have sued in ejectment. Citing *Lambert v. Murray,* 52 Colo. 156, 120 Pac. 415.

Defendants are not in a position to successfully urge this proposition. Their second defense is an affirmative one. They alleged title and possession in themselves, and under the following decisions they cannot be heard to say that plaintiffs cannot maintain an action to quiet title because of being out of possession. *Square Deal Co. v. Colomo Co.,* 61 Colo. 93, 96; *Haymaker v. Windsor Reservoir & Canal Co.,* 81 Colo. 168, 354 Pac. 768. These cases, in effect, overrule *Lambert v. Murray, supra.*

3. Defedants complain that the court erred in overruling their objections to the admission of Plaintiffs' Exhibit C, being a certified copy of an annual report of the Cornucopia Company, filed with the secretary of state, on the ground that the certified copy was not the best evidence. The record fails to disclose that this objection was made when the exhibit was offered, and we cannot, therefore, consider the objection when made here for the first time.

4. It is urged that plaintiffs are estopped by their conduct from alleging and claiming a forfeiture. The evidence of Mr. Gunkle is as follows: "Sometime during the latter part of 1924, I think it was, I was employed by a number of parties, of whom Mr. Reubendale and some

more of them were at the head, to act as trustee in taking
over this old property of the Cornucopia.  The Stearns-
Rogers people had secured a judgment against the
Cornucopia Company in November, I think it was Novem-
ber 1, 1924, and thereafter an execution was issued,
placed in the hands of the sheriff of Gilpin county, levy
made on the property, it was advertised for sale, and on
May 12, 1925, I went to Central City with Mr. Ben Grif-
fith, who represented the Stearns-Rogers people, and the
property was sold from the court house steps by the
sheriff; it was bid in by me for $7,475,   *   *   *   this
property was offered separately, and I refused to bid,
and I bid on it as a whole; it was knocked off to me and I
paid the sheriff that amount, and the sheriff's certificate
of sale was issued, a copy given to me, and one recorded
in Central City.  I will say that all of this was done with
full knowledge of Mr. Kenney, who is sitting here.   *   *   *
I will say that several weeks prior to May 12, 1925, Mr.
Kenney came to my office and asked me when the sale was
going to be made; I told him May 12th; Mr. Kenney then
asked me if it would be necessary for him to go to the
expense of having an attorney there to represent him.
I told him that I could not advise him on that; that I was
representing the other parties; however, I did not intend
to buy anything except what belonged to the old Cornuco-
pia Company, and as I understood it then the Reform
Lode and the Reform Millsite, and that we could not
possibly buy anything belonging to him, and were not
attempting to.  He then asked me what the boys were
going to do, going to work it?  And I said, 'Why, sure,
that is the reason we are buying it.'  Now, after the sale,
and after we had received our certificate   *   *   *   Mr.
Kenney came in to my office again; I wouldn't say just
how long after, whether it was two weeks, or a month, but
it was after the sale; he came to my office again and
wanted to know if I would get the boys together and let
him write a new contract.  He wanted to kill this old
contract which we had bought, and wanted to know if I

would get them together and get them to consent to him writing a new contract, and I told him, 'Well, I would see what they had to say about it,' and I asked him what he had in mind, and he says, 'Well, I will cut out the entire 170'—I think it was 180,000—he says, 'I will cut out the entire amount;' and I said, 'What are you going to put in there?' And he says, 'Nothing.' Now, everything that was done was with his knowledge.  *  *  * Well, that was practically all that was said by Mr. Kenney in my presence. He was in my office twice; he was up there once before the sale, and once after the sale.''

Mr. Reubendale testified that he had a conversation with Mr. Kenney after the Stearns-Roger Manufacturing Company caused a writ of execution to issue; that Mr. Kenney came in to see him and asked him what they were going to do about it; that the witness told Kenney they were going to get together, a bunch of them, and buy it in and protect their interests; that they were going to buy it and work it; that this conversation with Kenney was prior to the time that they raised the money to buy the property on execution; that Mr. Kenney raised no objection to this; that Mr. Kenney used to come in his office quite often after the sale was made and the property was leased, and asked him how they were getting along, or words to that effect; that Mr. Kenney raised no objection to the proceedings at any time, and that he talked to him often; that he told Kenney that they had the property leased and were working it.

After full consideration of this evidence, undisputed as it was, we have come to the conclusion that it is sufficient to sustain the plea of estoppel.

This evidence shows that defendants were misled, to their injury, by the language, actions and conduct of the plaintiff, James Kenney. If Kenney intended to claim a forfeiture, it was his duty to so inform defendants when he was advised by them of their intention to purchase the contract and the property of the Cornucopia Company. Defendants expended a large amount of money in the

purchase of the contract and property of the Cornucopia Company, and in the payment of taxes on the property, which doubtless they would not have done had they been aware that Kenney intended to claim a forfeiture. It is true the contract was of record, but that would furnish no notice to defendants of anything more than that the contract could be forfeited, and that notice of forfeiture was waived.

What is said in *Green v. Hulse,* 57 Colo. 238, 245, 142 Pac. 416, we think is applicable to the facts here and fully sustains our conclusion. It is there said: "She knew all of these facts when she consented and acquiesced in the transaction and then raised no objection to the mental capacity of Mrs. Hulse to make the deed. * * * Where a person with actual knowledge of the facts, induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and the other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice."

The opinion in that case quotes from *Patterson v. Hitchcock,* 3 Colo. 533, as follows: "In cases involving the title to real estate, the doctrine of estoppel by conduct rests upon the broad principle of equity, that one who encourages by representations, or even stands by and sanctions the acquisition of land by another, will be estopped to defeat the purchase by afterwards asserting title in himself."

Furthermore, this is an action in which the plaintiffs seek equitable relief. "The rule is that equity will never enforce a forfeiture." *Olson v. Harvey,* supra; *Conklin v. Shaw,* 67 Colo. 169, 176; *Wagner, et al. v. Way,* 70 Colo. 260, 261.

Judgment reversed.