No. 18,799.

THE BRADLEY REALTY INVESTMENT COMPANY *v.*
HARRY SHWARTZ.
(357 P. [2d] 688)

Decided December 19, 1960.

Mr. JACKSON M. SEAWELL, Mr. HAROLD D. TORGAN, for plaintiff in error.

Mr. JOSEPH N. LILLY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as Bradley or plain-

tiff, and to defendant in error as Shwartz or defendant.

Bradley filed his complaint in three counts seeking recovery of a commission of $3,750.00 alleged to have been earned by him for procuring a buyer for real estate (first count); and recovery of a commission of $4,725.00 alleged to have been earned by him for procuring a tenant for real estate (second and third counts in the alternative).

At the close of plaintiff's evidence, the trial court granted defendant's motion for dismissal, discharged the jury, entered its written findings and order, and directed the entry of judgment for defendant.

For reversal it is urged that the evidence was sufficient to support a verdict for plaintiff as to each count, and that the trial court erred in granting defendant's motion to dismiss at the close of plaintiff's case.

The evidence discloses the following facts:

In 1947, Bradley, a licensed real estate broker, obtained an oral nonexclusive listing to sell an unimproved tract of land owned by Shwartz, located on Colorado Boulevard between East Arkansas and East Florida Avenues in Denver. The tract has a frontage along Colorado Boulevard of 730 feet, with a depth of 299 feet. For convenience of discussion, this tract has been divided into two parcels — Parcel A relating to Bradley's first cause of action and Parcel B relating to Bradley's second and third causes of action. In the beginning, Bradley was authorized to sell the entire tract at a list price of $20,000.00, however as time progressed and the economic picture in the vicinity changed with the growth of the area, the manner and method of dealing with the property and the list price was frequently changed by Shwartz; and, in 1950, Shwartz declared that he no longer desired to sell Parcel B but said he would lease it. Thereafter the parties dealt with the tract as two separate pieces of property and discussed various propositions both as to the sale of Tract A and the leasing of Tract B.

In 1955, Tract A then had a list sale price of $80,000.00 and in the summer of that year Bradley found a prospective purchaser for $75,000.00 cash. This information was communicated to Shwartz by Bradley through a telephone conversation.

Mr. Bradley, who was the only witness called for the plaintiff, testified inter alia as follows with reference to what was said to defendant concerning the $75,000.00 offer:

"A. Before I got to drawing the contract, I said to Mr. Schwartz it appeared that the purchaser was about ready to put down a deposit, but that they didn't want to pursue it further unless we were going to be able to deliver. They were going to have to go to some trouble to approve the deal — meetings and so on — and didn't want to go to that trouble unless they could get delivery; and I explained that to Mr. Schwartz. Q. Did you tell him what the price was? A. I told him the price. Q. And the terms? A. Right. Q. It was a cash deal? A. It was a cash deal. Q. What did you tell him, if anything, as to the necessity for accepting or rejecting the deal then? A. I didn't tell him anything — in that telephone conversation I said, 'Shall I pursue this deal? Do you want it?' There had been other occasions when the price had been changed, and there was no use to go to all that trouble — of which there was quite a bit — unless Mr. Schwartz would take it. Q. Did Mr. Schwartz accept the deal, as outlined by you? MR. LILLY: That calls for a conclusion. THE COURT: That is correct. Q. What did Mr. Schwartz say when you told him the terms and price, as to whether or not he would accept it? A. He said that he would take the deal, and to bring him the Contract. Q. Did you take the contract out to Mr. Schwartz for his signature? A. Yes, I did. Q. Did he ever sign it? A. Never signed it. Q. What reason did he give you for not going through with the deal? A. He said the auditor, or his income tax advisor, told him the capital-gain tax would be substantial, and in view of that

he decided he better keep the property and lease it — but, there was never any counter-proposal of any price, or anything like that."

Defendant was called for cross-examination as an adverse witness and stated with reference to this conversation, as follows:

"Q. Did you discuss with Mr. Bradley, in the summer of 1955 — July — the sale of a plot of this ground of 200 feet running on Colorado Boulevard and going 299 feet to the east? A. I remember discussing — I don't exactly just know what took place. Q. Do you recall Mr. Bradley calling you at that time and telling you he had a cash purchaser for $75,000 for part of that property? A. I do, yes. Q. Didn't he tell you in that conversation there was no need for him to come out with a contract for you to sign unless you were willing to go through with the deal? A. I don't recall his making such a statement. Q. He might, or might not, have made such a statement? A. I don't recall his making such a statement, to my knowledge. Q. He told you over the telephone the terms of this proposal, didn't he? A. I think he did. Q. And, as a matter of fact, it was for $75,000 cash, wasn't it? A. That's right. Q. On the telephone you told him to bring the contract on out? A. I told him for him to bring the contract out so I can look at it."

\* \* \*

"Q. As a matter of fact, didn't you give Mr. Bradley as your reason for not going through with the deal, the fact there would be very heavy income taxes for you to pay, which you had been advised of after he brought the contract out? A. Well, it had some bearing, and, also, the price I was supposed to have gotten, which was $5,000 different."

The question thus raised was whether defendant had accepted the offer made by plaintiff's prospect. There was sufficient evidence to support a finding by the jury that the defendant had agreed to sell for $75,000.00 cash, and that plaintiff was authorized to pro-

ceed on that basis. The trial court erred in granting the motion to dismiss the claim of plaintiff relating to this transaction. The evidence raised an issue of fact which should have been determined by the jury.

In *Nelson v. Centennial Casualty Co.*, 130 Colo. 66, 273 P. (2d) 121, this court stated, inter alia:

"Counsel for plaintiff rightly contend that in order to sustain a defendant's motion for dismissal, or nonsuit, at the close of plaintiff's case, the court must view the evidence in the light most favorable to the plaintiff, and that where there is substantial evidence tending to establish a cause of action, it is error to direct a verdict in favor of defendant; that it is not for the court to judge as to the weight of the evidence nor the credibility of witnesses. These are well-recognized principles, and the books abound with numerous decisions in support thereof. These principles, however, most usually apply, in instances where there is some conflict between the testimony of two or more witnesses, and in such cases as where the minds of reasonable men might draw different conclusions from the evidence, or by inference properly deducible therefrom. * * * "

The instant case is well within the coverage of this language.

With reference to the claim of plaintiff for a commission allegedly due upon consummation of a lease of parcel B between the defendant and one Myers, the witness Bradley testified, inter alia:

"A. Well, Mr. Myers inquired about the corner, and I told him that Mr. Schwartz had instructed me that he did not want to sell, or divide, his 300 feet on the corner, and that he could not deal on 200 feet — which was what he seemed to have in mind as to what he could use at that time. Mr. Myers also said that he wanted to have the owner of the property build the building; that he, at that time, wanted to lease a package — and Mr. Schwartz said he wouldn't be interested in that. So, I didn't have

anything to talk with Mr. Myers about the corner — Mr. Schwartz would not talk with him about that.

\* \* \*

" \* \* \* But, at that time, Mr. Schwartz was willing to sell his inside 200 feet, and Mr. Schwartz wanted me to tell Mr. Myers about the inside 200 feet — which I had already done, and Mr. Myers said he was definitely not interested in that — so it was pretty much to acquaint Mr. Schwartz with Mr. Myers' operation, that I took him out there."

Several months thereafter, without any showing of effort on the part of plaintiff, defendant and Myers entered into an 18-year lease of the property referred to as plot A, which is the same property involved in the first claim of plaintiff, being the plot on the corner of the intersection.

We think the instant case is governed by the rule applied in *Hayutin v. DeAndrea,* 139 Colo. 40, 337 P. (2d) 383. In that case we quoted from *Heady v. Tomlinson,* 134 Colo. 33, 299 P. (2d) 120, as follows:

" 'First, before the broker can be said to have earned his commission he must produce a purchaser who is ready, willing and able to purchase the property upon the terms, and at a price designated by the principal.

" 'Second, the broker must be the efficient agent or procuring cause of the sale. The means employed by him and his efforts must result in the sale. He must find the purchaser and the sale must proceed from his efforts acting as broker.' "

Plaintiff's evidence falls short of meeting the above requirements in connection with the leasing of parcel A, and the trial court was right in dismissing the claim based thereon at the close of plaintiff's case. As to this phase of the case the judgment is affirmed. The cause is remanded with directions to submit to a jury for determination the issues framed by the first claim.

MR. JUSTICE KNAUSS and MR. JUSTICE FRANTZ concur.