HOLLAND REALTY INVESTMENT CO., A CORPORATION, AND GRANT HOLLAND, APPELLANTS AND CROSS-RESPONDENTS, v. STATE OF NEVADA, DEPARTMENT OF COMMERCE, REAL ESTATE DIVISION, AND NEVADA REAL ESTATE ADVISORY COMMISSION, RESPONDENTS AND CROSS-APPELLANTS.

No. 5313

January 25, 1968                    436 P.2d 422

*Cornwall & Nitz,* of Las Vegas, for Appellants and Cross-Respondents.

*W. Bruce Beckley,* of Las Vegas, for Respondents and Cross-Appellants.

## OPINION

By the Court, Mowbray, J.:

Appellant Grant Holland was a duly licensed real estate broker operating in Las Vegas under the style and name of Holland Realty Investment Co.

The State of Nevada, Department of Commerce, Real Estate Division, filed a complaint against Holland and his corporation, charging them with numerous violations of NRS chapter 645, Real Estate Brokers and Salesmen. After a hearing before the Nevada Real Estate Advisory Commission, appellants' real estate licenses were revoked.

Specifically, the Commission found that appellants violated NRS 645.630, paragraphs 1, 2, 3, 9, 10, 16, 18, and 19; NRS 645.660; and also section VII, paragraphs 1 and 9, of the Rules and Regulations of the Nevada Real Estate Advisory Commission.[1]

---

[1]NRS 645.630. "The commission shall have the power to suspend, revoke or reissue, * * * any license issued under the provisions of this chapter at any time * * * where the licensee, whether or not acting as a licensee, is deemed to be guilty of:

"1.  Making any substantial misrepresentation.

"2.  Making any false promises of a character likely to influence, persuade or induce.

"3.  Pursuing a continued and flagrant course of misrepresentation, or making of false promises through agents or salesmen or advertising or otherwise.

"*  *  *

"9.  Disregarding or violating any of the provisions of this chapter or of any rule or regulation promulgated thereunder.

"10.  Paying or receiving any rebate, profit, compensation or commission in violation of this chapter.

"*  *  *

"16.  The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission or profit or the failure of

Appellants appealed to the district court from the Commission's order revoking their real estate licenses. The record of the proceedings before the Commission was submitted to the district judge. No new evidence was offered in the court hearing. The district judge, after reviewing the record, filed a written decision finding that the Commission did not abuse its discretion in revoking appellants' licenses on the grounds that appellants were guilty of violating paragraphs 10 and 16 of NRS 645.630.

Appellants appeal from the district court order of revocation, while respondents cross-appeal, asserting the district judge should have found appellants guilty of each and all of the remaining violations found by the Commission.

Factually, Holland engaged in what is euphemistically termed in real estate transactions as "double escrowing." There were two transactions. In one escrow he purchased a residential home from the true owner (Edwards) for $3,500 and sold the home in the second escrow to the true buyer (Jeppson) for $4,500, retaining for himself the $1,000 difference less the cost of the two escrows. Upon close of the escrows Holland, without buyer's or seller's knowledge, arranged that sufficient moneys deposited in the buyer's (Jeppson's) escrow be transferred to the seller's (Edwards') escrow to complete the Edwards escrow. Both escrows were opened either on the same or consecutive days. Both escrows closed simultaneously.

---

a licensee to reveal to the employer of such licensee the full amount of such licensee's compensation, commission or profit under any agreement authorizing or employing such licensee to sell, buy or exchange real estate for compensation or commission prior to or coincident with the signing of such agreement evidencing the meeting of the minds of the contracting parties, regardless of the form of such agreement, whether evidenced by documents in an escrow or by any other or different procedure.
"* * *

"18. Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public.

"19. Any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent or dishonest dealing."

Paragraphs 1 and 9 of section VII, Rules and Regulations of the Nevada Real Estate Advisory Commission, read as follows:

"1. The Code of Ethics of the National Association of Real Estate Boards is adopted by reference herein and each licensee shall abide by said code.

"9. Unless he shall first notify the interested parties in writing, no licensee shall attempt to buy, or offer to buy, or attempt to sell, sell or offer to sell, for himself, directly or indirectly, any interest in any real property, including any right under any option."

The parties have admitted that at no time did Holland advise the buyer that he was acting for himself.

Shortly thereafter Holland sold the same residential unit for Jeppson to a third party (Wesley). In this deal Holland misrepresented to Jeppson that he had received from Wesley a $500 cash down payment against a purchase price of $8,500. In reliance on this, Jeppson agreed to compensate Holland with one-third of the expected profits, or about $1,250. Jeppson actually paid Holland $750 in cash, which amount, with the $500 supposedly received as a down payment, comprised Holland's commission. Actually, Holland did not receive $500 in cash as he represented to Jeppson, but only $100 plus Wesley's note for $400. Wesley later defaulted on his payments and was evicted by Jeppson.

Holland admits:

1.   He was not the record owner of the property.

2.   He did not tell the buyer that he was the owner of the property or who the owner was.

3.   The Jeppson escrow was opened June 11, the Edwards escrow was opened June 10, and both closed simultaneously.

4.   He failed to tell the Jeppsons that he was making a simultaneous purchase of the property from Edwards for $3,500 or that he was using the Jeppsons' money to make the purchase.

5.   He failed to tell the Jeppsons that he was making an $880.88 or any other profit on the transaction.

6.   He did not tell the Jeppsons that he could purchase the property for $3,500, or tell Edwards that the Jeppsons had offered to pay $4,500 for it.

7.   He did not advise the Jeppsons in writing (other than as they may have seen his name in the escrow instructions) that he was the seller of the property.

It is also clear from the record before the Commission that Holland told Mrs. Jeppson she was buying not from Holland but from a "man down the street." Mrs. Jeppson testified:

"Q.   And when he contacted you with regard to this piece of property, what did he tell you?

"A.   Well, he asked if we wanted to buy a house. So I wanted to know what he had in mind. He said, well, he had a small house that he could get for us, that *the man* had been having quite a bit of trouble with it, and he wanted seven thousand for it, but Holland got *him* to bring his price down to $4,500.

"Q.   And is that the price at which he told you he could get this property for you?

"A. Yes.

"Q. Did he identify the owner of the property?

"A. No—by the way, *he said it was a man who lived down the street from the house*. That is the only way I knew anything about who it was.

"Q. Did you examine the property?

"A. Yes.

"Q. And was it at this time that he told you that it was a man who lived down the street, if you remember?

"A. Well, we discussed it because *he said there was—the man down the street had the pump to the cooler, and that is where he lived, evidently.*"

Mrs. Jeppson further testified that even though Holland's name appeared on the escrow papers she considered Holland as her agent:

"Q. Now, at the time that you signed these escrow instructions, did you recognize or realize that Holland or Holland Investment Company was the actual seller of the property?

"A. Well, I should have, but I guess I didn't pay too much attention to it because all the papers and all the dealings that we have done with the trust deeds that we have bought, all the papers have Holland's name on it, appears there on all the business that we have done with him, but that was—it just did not register, I guess, but I did see it.

"Q. In any event, you did not recognize, or it did not register with you that his name there was listed as the seller?

"A. No, because it didn't—*he had discussed the man down the street, we were buying the house from him.* Well, it didn't occur to me that he was a go-between. *He was doing business for us—he always has.*"

The record clearly shows that when Holland first approached Mrs. Jeppson to purchase the property he indicated that he was acting as a broker, not as a principal. He had had previous real estate transactions with the Jeppsons, and the Jeppsons knew him as a broker because he had previously acted for them in that capacity.

■■■■ ■

Under NRS 645.760 it is provided that the district court, on an appeal from the decision of the Commission, is "limited solely to a consideration and determination of the question whether there has been an abuse of discretion on the part of the commission in making such decision." And the burden of proof is upon the appellant. The function of the court at this time is the same as that of the lower court. McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961).

The district judge said in his written decision:

"* * * In this case the appellant bought a piece of property from one Edwards, opened an escrow and on the following day contacted the Jeppsons. The Appellant bought the property from Edwards for $3,500.00, taking the title in its corporate name and reselling the same property to Jeppson the following day for the sum of $4,500.00, using Jeppson's money to complete the transactions entered into the day previous with Edwards.

"There was no disclosure by the Broker specifically that he was selling this property for a profit of a thousand dollars less cost. * * * *The sin of the transaction was in not advising the Jeppsons that he had the previous day opened an escrow to buy the property for $3,500.00.* His remaining silent on this transaction is more deceit than any other category that the Court can find which violates the provisions of the real estate act."

The very practice of double escrowing is fraught with deception, and one who engages in it cannot do so with the candor and honesty demanded of a duly licensed real estate broker without violating and breaching the basic fiduciary trust which is expected of him.

Violation of this trust is subject to the same punitory consequences that are provided for a disloyal or recreant trustee. King v. Wise, 43 Cal. 628 (1872); Langford v. Thomas, 252 P. 602, 603 (Cal. 1926).

Such an agent is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. Langford v. Thomas, supra; Williams v. Lockwood, 166 P. 587 (Cal. 1917); Feckenscher v. Gamble, 85 P.2d 885 (Cal. 1938); Curry v. King, 92 P. 662 (Cal. 1907); Silver v. Logue, 16 P.2d 183 (Cal. 1932); Jolton v. Minster-Graf & Co., 128 P.2d 101 (Cal. 1942); Baird v. Madsen, 134 P.2d 885 (Cal. 1943).

In the instant case there can be no doubt that Jeppson would not have purchased the property for $4,500 had he known it could be purchased for $3,500. Holland not only failed to disclose the truth but represented to Jeppson that he had prevailed upon the seller to reduce the price to $4,500. Even if Holland had not been Jeppson's broker and under no fiduciary duty, once he discussed the question whether a lower price was attainable he had to "speak the whole truth and not by partial

suppression or concealment make the utterance untruthful and misleading." Am. Trust Co. v. Cal. W. States Life Ins. Co., 98 P.2d 497, 508 (Cal. 1940); Rattray v. Scudder, 169 P.2d 371, 377 (Cal. 1946).

A broker when pursuing his own interest cannot ignore those of his principal and will not "be permitted to enjoy the fruits of an advantage taken of a fiduciary relationship, whose dominant characteristic is the confidence reposed by one in another." Curry v. King, supra, at 665.

The law does not allow the agent who also has a right to purchase to wait until someone makes an offer of an amount in excess of the agreed purchase price and then elect to purchase the property at the lesser price without informing the owner of the higher offer, and, after the agent has obtained the consent from the owner to buy the property, then immediately sell it for the higher price as his own property. Neighbor v. Pac. Realty Ass'n, 124 P. 523, 526 (Utah 1912).

In the language of the Restatement of Agency § 390, Comment a: "Before dealing with the principal on his own account * * * an agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all material facts fully and completely. A fact is material * * * if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms. Hence, the disclosure must include not only the fact that the agent is acting on his own account * * *, but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal." Rattray v. Scudder, supra.

The decisive consideration is that when Holland told Jeppson he had succeeded in reducing the purchase price to $4,500, his firm was at that very moment purchasing the property for $3,500, unbeknown to Jeppson.

Accepting Holland's position that he was truly not acting as a broker but as an owner only, "there can be no justification of an interpretation of the licensing act which would allow a broker to be honest as a broker and dishonest as a property owner. A broker who is dishonest or incompetent in the real estate activities in which he is involved as owner, is not likely to be honest or competent in his activities which are purely brokerage in nature. The purpose of real estate licensure is to

bar the dishonest or incompetent from entry into this occupa-
tion: Roman v. Lobe, 243 N.Y. 51, 152 N.E. 461, 50 A.L.R.
1329. * * *

"We believe that a single standard of honesty and compe-
tency should guide a broker's real estate activities whether
performing as broker or owner." State Real Estate Comm'n
v. Tice, 190 A.2d 188 (Pa. 1963).

Under paragraph 3 of NRS 645.760, the trial court was
limited in making its decision with respect to the penalty to be
imposed in the same manner as with respect to defendants'
guilt; that is, "solely to a consideration and determination of
the question whether there has been an abuse of discretion on
the part of the commission in making such decision."

The trial court found that the evidence received by the Com-
mission supported the Commission's findings that paragraphs
10 and 16 of NRS 645.630 had been violated, and sustained
the Commission's order that appellants' licenses be revoked,
finding that the Commission did not abuse its discretion in
making such decision. We concur with the order of the district
judge. In view of our ruling on the appeal, it is not necessary
to discuss the issues raised by respondents' cross-appeal.

Affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ.,
concur.