## No. 22739.

CIRCLE T CORPORATION AND ROBERT E. ALLEN *v.* GENEVIEVE N. DEERFIELD AND EGBERT T. DEERFIELD.

(444 P.2d 404)

Decided July 15, 1968.     Rehearing denied September 9, 1968.

GREENBERG and YOELIN, for plaintiffs in error.

DANIEL F. LYNCH, GEORGE J. DUCKWORTH, for defendants in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

EGBERT and Genevieve Deerfield brought this action to recover the sum of $2,110 paid as a purported broker's commission to the Circle T Corporation. The trial court entered judgment for this sum against the corporation and its licensed broker, Robert E. Allen. To reverse the judgment of the trial court the corporation and Allen sued out this writ of error.

The limited issues here arise out of the following conclusion of law of the trial court:

"* * * Defendant Circle T Corporation performed no services entitling it to a commission, and, therefore, was unjustly enriched in the sum of $2,100.00. The Circle T Corporation purported to act in the capacity of a real estate broker at the time of closing, and moneys were received by it, including the amount of commission. This constituted a breach of duty as a fiduciary, and the licensed real estate broker of the corporation, Robert E. Allen, hence, is liable along with the corporation."

The plaintiffs in error counter the conclusions of the trial court by these two affirmative propositions:

"I. A BROKER'S RIGHT TO COMMISSION IS DETERMINED BY THE CONTRACT OF EMPLOYMENT AND NOT BY REFERENCE TO SERVICES PERFORMED.

"II. THE FIDUCIARY RESPONSIBILITY OF AN INDIVIDUAL BROKER, ACTING AS BROKER FOR A CORPORATION, IS DEFINED AND LIMITED BY STATUTE.

We will consider each proposition separately under their respective identifying numerals. First, the participants should be identified.

*The Deerfields,* defendants in error; owners and sellers of "the property."

*The Peters,* defendants below, but not parties to this

writ of error; buyers of the property. Mr. Peters was the vice-president of Circle T Corporation, but not a licensed real estate salesman or broker. He was general manager "in relation to the department or area of operations referred to as business opportunities."

*Joseph B. Fastabend,* a real estate salesman for Ambrose-Williams.

*Stewart D. Saliman,* secretary-treasurer of Circle T Corporation and a licensed real estate salesman for it.

*Robert E. Allen,* plaintiff in error; president of Circle T Corporation; the director designated and appointed by the corporation under C.R.S. 1963, 117-1-5(7).

*Circle T Corporation,* plaintiff in error; a corporation engaged in the real estate brokerage business.

I.

The contract of employment or listing agreement on which plaintiffs in error rely provides:

"In consideration of the services of the undersigned real estate broker * * * I hereby grant said broker the exclusive and irrevocable right to sell * * * . In case of any sale or exchange of same within that time, either by the undersigned owner, the undersigned broker, or by any person, * * * I hereby agree to pay said broker 6% of the selling price for his services."

This listing agreement was executed by the Deerfields on December 12, 1963; it followed by four days the execution of a contract whereby the Deerfields agreed to convey their residence to Robert Peters and his wife for a stipulated price. The sale was consummated on December 30, 1963. In the settlement, Circle T Corporation withheld $2,110 as a commission.

Fastabend, although he had no listing agreement from the Deerfields, had been showing the property during the summer and fall of 1963. He showed it to the Peters. As a result of his efforts, on December 8, 1963, the Deerfields and Peters agreed upon the terms for the sale of the property to the Peters. On December 12, 1963, Mr. Peters took Saliman to the property for the sole

purpose of obtaining the listing agreement, because he, Peters, could not lawfully enter into such an agreement.

The testimony, as to what occurred at the December 12 meeting, of Mrs. Deerfield in reference to this agreement is significant:

"A. * * * Mr. Fastabend did not have a listing commission with him, and Mr. Peters said that he would write it on his own [form] * * * and I said to Mr. Peters, 'Will Mr. Fastabend then, if you write it up on your paper, will he receive his listing commission?

"Q. What did Mr. Peters say?

"A. He said, 'Absolutely he would receive it.'"

Also, the testimony of Mr. Peters:

"Q. Why did you bring Mr. Saliman with you on the second occasion that you went over to the Deerfield home, Mr. Peters?

"A. So Mr. Saliman could make out a listing contract * * * Mr. Saliman was a real estate salesman for Circle T Corporation.

"Q. Now, you had gotten in touch with this property through Mr. Fastabend, not through anybody from Circle T?

"A. That's correct.

"Q. And you were dealing in your own behalf as the purchaser of the property, is that correct?

"A. That's correct, sir.

"Q. You brought Mr. Saliman over so Circle T Corporation could earn a commission. Now, how did Mr. Saliman earn this commission for Circle T Corporation? What services did he perform?

"A. He drew the listing.

"Q. Well, that is — he drew up a listing and typed up the contract you had already agreed to with the seller?

"A. That's correct.

"Q. And that is the basis upon which Circle T Corporation was paid the commission, is that correct?

"A. That is the basis, sir, yes."

Circle T, it should be noted, did not pay the commis-

sion or any part thereof to Mr. Fastabend or Ambrose-Williams.

■■■ The general rule is that a real estate broker, under a valid listing agreement, is entitled to recover a commission (1) when he produces a purchaser who is ready, willing and able to purchase the property upon the terms designated by the principal, and (2) he is the efficient agent or procuring cause of the sale. See: *The Bradley Realty Investment Co. v. Schwartz*, 145 Colo. 65, 357 P.2d 638; *Hayutin v. DeAndrea*, 139 Colo. 40, 337 P.2d 383; *Heady v. Tomlinson*, 134 Colo. 33, 299 P.2d 120. In the present case, the trial court held that the general rule was not applicable and that the listing agreement did not become operative. We agree with the trial court. The agreement, by its very terms, presupposed that the land was *available* for sale. This was not true because the seller, *prior* to signing the listing agreement, had already contracted to sell the property to Peters. The corporation knew this because one of its officers (Peters) was the purchaser named in that contract, and another officer (Saliman) at Peters' request executed the listing agreement on behalf of the corporation. See *Treat v. Schmidt*, 69 Colo. 190, 193 P. 666.

■ In *Garrett v. Richardson*, 149 Colo. 449, 369 P.2d 566, this court discussed at length the nature of the obligations between a broker and principal arising under an exclusive listing agreement. Although the result was different because of the factual situation, what we said in that decision is pertinent to this discussion. We there stated:

"Here we have a document in which the owners expressly agree to do certain things. The broker does not expressly agree to do anything. Courts uniformly hold that such a document is not a binding contract until some service is rendered by the broker looking to the sale of the property. * * *"

■ Circle T was a bystander as far as the sale of the residence by the Deerfields to the Peters is concerned.

So long as the contract of sale was alive, the listing agreement had, of necessity, to remain dormant. Consequently, since the corporation had nothing to do with the sale of the property it is not entitled to a commission.

II.

The liability of Robert E. Allen, the president and licensed broker for Circle T. Corporation, depends upon the application of the terms of C.R.S. 1963, 117-1-5(8) to the facts before us. This statute, in pertinent part, provides:

"* * * In the event of any breach of duty by the said partnership or corporation as a fiduciary, any person aggrieved or damaged by the said breach of fiduciary duty shall have a claim for relief against such partnership or corporation, as well as against the designated member or director acting as broker, and may pursue said claim against the partnership or corporation and the designated member or director personally, and the said member or director may be held responsible and liable for damages based upon such breach of fiduciary duty as may be recoverable against the said partnership or corporation, and any judgment so obtained may be enforced jointly or severally against said member or director personally and the said partnership or corporation."

The judgment against Mr. Allen must be sustained if there was "any breach of duty" by Circle T "as a fiduciary." The trial court found that Circle T, having performed no services, "was unjustly enriched in the sum of $2,110.00," and that Circle T, by acting in the capacity of a real estate broker at the time of the closing and receiving and disbursing the proceeds of the sale, including its claimed commission, was acting as a fiduciary.

In addressing ourselves to this problem, the more difficult phase of it relates to the fiduciary character of Circle T's relation to the Deerfields. In agreeing with the trial court's conclusion that the Deerfields were en-

titled to the return of the commission from Circle T, we, in effect, are holding that there had been a breach of a duty owed by Circle T to the Deerfields. The only remaining question then is whether Circle T was acting as a *fiduciary* at the closing when it withheld the commission for itself. In other words, did Circle T's retention of the purported commission violate a fiduciary obligation, or did it merely create a debtor-creditor relationship?

■ There are no reported cases on this particular point in Colorado. The circumstances here are somewhat less onerous than in those cases, of which there are many, where a broker receives a secret profit from a third party, or from the purchaser. Courts generally hold that in those circumstances there is a fiduciary relation and that the broker has clearly violated his duty to be faithful to the principal. *McKinney v. Christmas,* 143 Colo. 361, 353 P.2d 373; *Treat v. Schmidt, supra.*

■ According to Black's Law Dictionary at 753 (4th ed. 1951), "Fiduciary Relation" is defined as

"An expression including both technical fiduciary relations and those informal relations which exist whenever one man trusts and relies upon another. Peckham v. Johnson, Tex. Civ. App., 98 S.W.2d 408, 416. It exists where there is special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to interests of one reposing the confidence. * * *"

■■ In the *Treat* case, *supra,* the court said that "The law does not allow an agent to occupy a position in which he may be tempted to betray his trust." In effect, the court recognized that the foundation for the fiduciary relationship which exists between an agent and his principal is predicated on the *trust or confidence* which the principal reposes in the agent.

■ In *McKinney v. Christmas, supra,* this court, in a case involving a real estate broker and his principal, said:

"In all his dealings affecting the *subject matter of his*

*agency,* it is the duty of the agent to act with the utmost good faith and loyalty in behalf of his principal. * * *"

Although the listing agreement, under the facts set out above, could not become a viable contract, nevertheless the evidence shows that Circle T and the Deerfields were not dealing at arms length in connection with the sale of the house. Peters, when asked, "Who was Circle T representing in the transaction between yourself and Genevieve and Egbert T. Deerfield?", replied, "Circle T Corporation was representing Circle T Corporation and presumably Mrs. Deerfield * * * and myself." The circumstances under which the listing agreement was secured and the failure to honor the obligation to Mr. Fastabend, as set out above, are also significant factors in our conclusion on this point.

■ The sale of the house by the Deerfields to Peters was the *subject of the agency;* the listing contract was an incident in that relationship, but not *the whole* of the relationship. It is apparent from the record that the Deerfields reposed such a degree of confidence and trust in the corporation and its representatives as to bring the relationship within Black's definition, *supra.*

The allotment of the commission to the corporation in the closing statement, which the corporation prepared, constituted a breach of duty. Fairness and equity support the conclusion of the trial court that the corporation was "unjustly enriched."

We hold that the trial court correctly assessed the situation and that its conclusion was correct.

The judgment is affirmed.

Mr. Justice Day dissenting.

Mr. Justice Pringle not participating.