### No. C-1159

**William S. Sunshine and Blanche Z. Sunshine v. M. R. Mansfield Realty, Inc., a Colorado corporation**

(575 P.2d 847)

Decided March 6, 1978.                    Rehearing denied March 27, 1978.

Sterling, Simon & Rubner, Roger L. Simon, for petitioners.

Caskins, Hertzman & Chanzit, Richard M. Chanzit, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review *M. R. Mansfield Realty, Inc. v. Sunshine*, 38 Colo. App. 334, 561 P.2d 342 (1976). We affirm.

William S. and Blance Z. Sunshine, petitioners, own a parcel of unimproved land in Arapahoe County. On August 24, 1971, they entered into an exclusive listing agreement with M. R. Mansfield Realty, Inc., respondent, in an effort to lease their property. Mansfield Realty

subsequently located a potential tenant, Mitchell James, who desired to operate a franchised fast-food restaurant on the Sunshine property. A lease proposal was drafted by the attorney for the Sunshines and signed by James on November 19, 1971. Subsequent negotiations resulted in the execution of a written lease by James and the Sunshines on February 7, 1972. The terms of the lease satisfied the explicit rent and tenancy provisions of the listing agreement. Additionally, the lease contained the following condition:

### "GUARANTY

"It is understood and agreed by and between the parties hereto that this lease is conditioned upon the terms and performance of said terms being guaranteed by the Small Business Administration, which guaranty Tenant shall obtain, and Tenant shall submit adequate proof to Lessors of such guaranty."

The parties to the lease also agreed that the Small Business Administration (SBA) need not directly guaranty the lease. The direct guaranty was to be made by a private insurance company with the SBA reinsuring that guaranty.

In August of 1972, James informed the Sunshines that the 80% SBA guaranty would soon be issued. Upon being so informed, the Sunshines insisted that the lease required a 100% SBA guaranty. James, having made substantial expenditures in connection with the lease, then attempted to obtain an additional 20% guaranty from other sources.

On August 22, 1972, the Sunshines terminated the lease on the ground that "the Small Business Administration would not guarantee the total rent, and due to the fact that said lease was conditioned upon complete guarantee by the Small Business Administration." An SBA guaranty for a business of the type contemplated by the lease in this case, however, cannot be obtained to the extent of 100%. 15 U.S.C. § 636(a)(3).

Mansfield Realty initiated this action, alleging that it had earned its commission under the listing agreement, because the Sunshines had wrongfully terminated the lease. Trial to the court resulted in a judgment in favor of the Sunshines. The trial court held that the guaranty provision in the lease was determinative. As a matter of fact and as a conclusion of law, the trial court declared that the guaranty had not been obtained and could not be obtained. Since the condition had not been satisfied, the trial court held that the Sunshines had the right to declare the lease null and void without incurring liability for a brokerage commission. The court of appeals reversed on the ground that the Sunshines had improperly terminated the lease. We affirm the court of appeals.

Where the record establishes that the parties to a contract originally attached the same meaning to a contractual term, and a disagreement as to the meaning of the term later arises, the trial court's determination of the provision's meaning is a finding of fact which is

binding on appellate courts. However, where neither party at the time of the contract was aware that the other attached a different meaning to the contractual provision, the trial court's determination of the provision's meaning is a conclusion of law based upon its interpretation of the document's language. *Sentinel Acceptance Corp. v. Colgate,* 162 Colo. 64, 424 P.2d 380 (1967); *Van Diest v. Towle,* 116 Colo. 204, 179 P.2d 984 (1947); *Conklin v. Shaw,* 67 Colo. 169, 185 P. 661 (1919). In the latter situation, a trial court could find as a matter of fact that there had been a mutual mistake as to the provision's meaning, but it could not determine the meaning of the provision as a matter of fact, since the parties had never attached the same meaning to the provision.

■ The record establishes that the Sunshines and James attached two different meanings to the guaranty's language. The Sunshines testified that they expected a 100% SBA guaranty, while James testified that he believed an 80% SBA guaranty was required. The trial court's conclusion that the lease's guaranty provision required a 100% guaranty, based upon its interpretation of the lease, is a conclusion of law not binding on an appellate court. *Sentinel Acceptance Corp. v. Colgate, supra; Van Diest v. Towle, supra; Conklin v. Shaw, supra.*

■ The general rule is that when parties to a contract ascribe different meanings to a material term of a contract, the parties have not manifested mutual assent, no meeting of the minds has occurred, and there is no valid contract. *Carpenter v. Hill,* 131 Colo. 553, 283 P.2d 963 (1955). However, an exception to the general rule is observed when the meaning that either party gives to the document's language was the only reasonable meaning under the circumstances. In such cases, both parties are bound to the reasonable meaning of the contract's terms.[1]  1 *A. Corbin, Contracts* § 104 (1963); *see also* 1 *S. Williston, Contracts* § 94 (W. Jaeger 3d ed. 1957). Moreover, the listing agreement was drafted by the Sunshines' attorney and must be construed most strictly against them. *Christmas v. Cooley,* 158 Colo. 297, 406 P.2d 333 (1965).

■ The Sunshines' understanding of the guaranty provision was clearly unreasonable, since a 100% SBA guaranty could not, as a matter of law, be obtained. Reference in the guaranty to the SBA necessarily incorporated and made the lease subject to the SBA's statutory restrictions as to maximum insurability. *See* 4 *S. Williston, Contracts* § 609 (W. Jaeger 3d ed. 1957). James was in the process of securing the maximum SBA guaranty available under the law when the Sunshines terminated the lease. We hold that James' construction of the guaranty provision under

---

[1] Construction of the contractual language to sustain a contract in such cases is not tantamount to the court's creation of a contract for the parties. The well-established and reasonable rule of construction applied in this case is a narrow exception to the general rule that a mutual mistake voids the contract.

the circumstances was the only reasonable construction available.

Since the lease did not require that James obtain a 100% SBA guaranty, the Sunshines' termination constituted "refusal or neglect of the owner to consummate the [contract] as agreed upon." Mansfield Realty, who procured a ready, willing, and able lessee on the terms of the listing agreement, was, therefore, entitled to its commission. Section 12-61-201, C.R.S. 1973.

Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE does not participate.

MR. JUSTICE GROVES concurs in the result.