Fred T. HILLER, III, Plaintiff-Appellant,

v.

The REAL ESTATE COMMISSION of the State of Colorado, Defendant-Appellee.

No. 79 SA 136.

Supreme Court of Colorado, En Banc.

May 4, 1981.

Eldon E. Silverman, P. C., Eldon E. Silverman, Philip A. Klein, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Jacqueline Vermeulen, Sp. Asst. Atty. Gen., Consumer Affairs Section, Denver, for defendant-appellee.

DUBOFSKY, Justice.

Fred T. Hiller, III, a licensed real estate broker, appeals the district court order af-

firming the Real Estate Commission's suspension of his broker's license for violations of section 12–61–113(1)(n) and (t), C.R.S. 1973 (1978 Repl. Vol. 5).[1]  We reverse.

Lorraine Fetzer, whose complaint to the Real Estate Commission prompted this suspension action, listed her home in Golden for sale through her broker, Paul Churchill. Hiller, and his wife, Flora, wanted to purchase the Fetzer home, but in order to do so, Hiller needed to sell a condominium he owned in Dillon.  Churchill agreed to buy Hiller's condominium in Dillon, and Hiller agreed to list a house his wife owned at 3035 DeFrame Road in Golden with Churchill.  On March 26, 1977, Hiller and Fetzer signed a receipt and option contract for the sale of Fetzer's home, and Hiller gave Churchill a check for $10,000 as earnest money.  Also on March 26, 1977, Churchill and Hiller signed a receipt and option contract for the sale of Hiller's condominium in Dillon.  Finally, on the same day, Hiller and Churchill signed an exclusive right to sell listing contract for the house at 3035 DeFrame Road.  All of these contracts were subject to an addendum signed by Churchill, Hiller and Fetzer describing the division between Churchill and Hiller of the commissions to be paid on each sale.  On the sale of Fetzer's home, Churchill was to receive 60% of the commission and Hiller 40%. In addition, the contract on the sale of the Fetzer home was made expressly contingent upon:

"Paul Churchill's purchase of Lakeview condo. in Dillon, Fred & wife's listing of their property at 3035 DeFrame Rd. Lorraine Fetzer's being able to enter a contract for purchase of Meadow Creek patio home.  Contracts for the above to be a part of this contract.  Closings to coincide."

On March 29, Fetzer's offer to purchase a Meadow Creek patio home was accepted. All closings were scheduled for July 1, 1977.

On July 1, Hiller informed Churchill that he did not have the money to close.  Fetzer refused to give Hiller a written extension, but subsequently consented to be present at a second attempt to close on July 14, 1977. Hiller appeared at the July 14th closing without sufficient funds to close and without the releases required to make his title to the Dillon condominium merchantable. Consequently, all of the closings failed, and Fetzer and Churchill split Hiller's $10,000.00 earnest money deposit.[2]

On July 27, 1977, when Hiller discovered that the Fetzer home was under contract to another buyer, he recorded the failed receipt and option contract.  Fetzer learned that the contract had been recorded when the title commitment for the sale of her home was issued and she was required to escrow $10,000.00 to complete the sale.  In August, 1977, she filed a complaint against Hiller with the Real Estate Commission.

After hearings on the complaint on March 22 and 23, 1978, the hearing officer recommended to the Real Estate Commis-

---

1.  Section 12–61–113(1)(n) and (t), C.R.S.1973 (1978 Repl. Vol. 5) provides:

"(1) The commission ... has the power to censure a licensee or to temporarily suspend or permanently revoke a license when the licensee has performed ... any of the following acts and is guilty of:

\* \* \* \* \* \*

(n) Having demonstrated unworthiness or incompetency to act as a real estate broker or salesman by conducting his business in such a manner as to endanger the interest of the public;

\* \* \* \* \* \*

(t) Any other conduct, whether of the same or of a different character than specified in this subsection (1), which constitutes dishonest dealing."

2.  The Colorado Real Estate Commission's standard receipt and option contract used here provides:

"Time is of the essence hereof ... In the event a payment or any other condition hereof is not made, tendered or performed by the purchaser, then this contract shall be null and void and of no effect, and both parties hereto released from all obligations hereunder, and all payments made hereon shall be retained on behalf of the seller as liquidated damages.... [I]n the event of forfeiture of payments made by purchaser, such payments shall be divided between the seller's broker and the seller, one-half thereof to said broker, but not to exceed the commission, and the balance thereof to the seller."

sion that Hiller's broker's license be revoked. The hearing officer found that substantial evidence had been adduced to prove that Hiller signed the contract both as "purchaser" and as "agent" and that he had agreed to split the commission on the sale of the Fetzer home with Churchill. The hearing officer therefore ruled that Hiller was Fetzer's agent and, as such, had violated his fiduciary duty to Fetzer by failing to disclose that 3035 DeFrame was titled in Flora Hiller's name only, by interpreting his contract with Fetzer to be subject to certain contingencies,[3] and by recording the contract on the Fetzer home without notifying Fetzer.[4] The hearing officer concluded that such acts violated an agent's fiduciary duty to his principal and constituted unworthy, incompetent and dishonest conduct which damaged Hiller's principal, Fetzer.

The Real Estate Commission, on July 31, 1978, adopted the hearing officer's initial decision that Hiller violated section 12–61–113(1)(n) and (t) and suspended Hiller's broker's license for five years. The district court, in a one sentence opinion, affirmed the Real Estate Commission's action and upheld the constitutionality of the section 12–61–113(1)(n) and (t).[5]

■ On appeal, Hiller contends that the statute is unconstitutionally vague, the order of the hearing officer is incorrect as a matter of law, and the evidence is insufficient to suspend his license. We agree that the hearing officer's conclusion that Hiller was Fetzer's agent was incorrect. Absent the fiduciary duty incumbent on an agent, the evidence of Hiller's misconduct is insufficient to sustain a suspension of his license under section 12–61–113(1)(n) and (t). Since we reverse the district court order because it was not supported by evidence, we express no opinion on the constitutionality of the statute.

The evidence upon which the hearing officer based his determination that Hiller was Fetzer's agent included Hiller's signature as "agent" on the contract to purchase the Fetzer residence. At the top of the standard receipt and option contract, "Fred Hiller" was typed in the blank for the name of the purchaser. The words "for Flora M. Hiller" were printed next to the typewrit-

---

**3.** Specifically, the hearing officer found that Hiller did not disclose the following:

"The knowledge of the other parties that failure of Respondent [Hiller] to deliver merchantable title and close or attempt to close in 'good faith' on the Lakeview Condominium in Dillon would defeat the contract between Mrs. Fetzer and Respondent.

The knowledge that Respondent never had $10,000.00 earnest money in jeopardy on the Fetzer-Hiller contract because if he did default, he intended to call in 40% of the broker's share as cooperating broker."

**4.** The hearing officer found that Hiller violated his duty to Fetzer, not because he recorded his contract with her, but because he did not disclose to her that he was recording the contract. The parties apparently assumed that Hiller properly recorded the contract. *See Seibel v. Colorado Real Estate Commission*, 34 Colo. App. 415, 530 P.2d 1290 (1974). *But see Brezina v. Hill*, 202 Neb. 773, 277 N.W.2d 224 (1979) (a broker is liable to his principal for clouding the title to the principal's property by recording without justification a sales agreement and a listing agreement); *Colorado Real Estate and Development, Inc. v. Sternberg*, 164 Colo. 184, 433 P.2d 341 (1967) (recording of an invalid mechanic's lien which clouded the title to property was upheld because there was no evidence that the recording was done maliciously); *Glas-*

ser v. Florida Real Estate Commission, 117 So.2d 761 (Fla.App.1960) (under a Florida statute a broker cannot record an invalid listing contract "maliciously or for the purpose of collecting a commission." Section 475.42(1)(k), Fla.Stat. F.S.A.). Hiller maintained that he was entitled to record the failed receipt and option contract to protect his $10,000 earnest money deposit because the liquidated damages provision of the contract was facially invalid. After Hiller recorded the contract, the court of appeals upheld the liquidated damages provision in the Colorado Real Estate Commission's standard form specific performance contract as fully enforceable in the absence of grounds for equitable relief. *Lundstrom v. Hackl*, 40 Colo. App. 322, 579 P.2d 85 (1978). *See also Western Enterprises, Inc. v. Robo-Sales, Inc.*, 28 Colo.App. 157, 470 P.2d 931 (1970); *Perino v. Jarvis*, 135 Colo. 393, 312 P.2d 108 (1957).

**5.** Hiller challenged the constitutionality of the statute before the hearing officer, but the hearing officer ruled that he was without authority to rule on the constitutionality of the statute. *Stevenson v. Industrial Commission*, 190 Colo. 234, 545 P.2d 712 (1976); *Kinterknecht v. Industrial Commission*, 175 Colo. 60, 485 P.2d 721 (1971).

ten "Fred Hiller." At the bottom of the form, the signature of Fred Hiller appears on the line for the purchaser and on the line for "agent." Lorraine Fetzer's signature appears in the space provided for the seller. Next to Hiller's signature as "agent" are typed the words "In cooperatio[sic] with Churchill & Co."

The receipt and option contract reflects on its face that Hiller was acting as the agent of his wife, Flora, who was the purchaser. Whether Hiller also had an interest as purchaser is not clear. The addendum also reflects that Hiller was to share the commission to be paid by Fetzer upon completion of the sale and that Fetzer, Churchill and Hiller all agreed to this. Hiller's signature as agent in cooperation with Churchill & Co., under these circumstances, indicates no more than the parties' intent that Hiller share in Churchill's commission. It would have created a relationship fraught with problems of conflict of interest for Hiller to act as agent for both the seller and the purchaser in this transaction. This is not a necessary or a natural construction of the parties' agreement and we do not adopt such a construction.

Furthermore, much of the conduct which the hearing officer found to constitute unworthiness and incompetency on Hiller's part can be viewed instead as confirmation of the parties' intent that Hiller was not an agent for Fetzer. Thus, lack of explanation by Hiller to Fetzer of the Hiller-Churchill agreement for sale and purchase of the Lakeview condominium in Dillon, upon the performance of which the parties' obligations under the Fetzer-Hiller receipt and option contract expressly were conditioned; lack of explanation that the Hillers' home was titled in Flora Hiller's name alone; and

other instances where Hiller did not insure that Fetzer fully understood all of the implications of the transactions can be viewed as conduct confirmatory of the parties' understanding that Hiller was not Fetzer's agent. Absence of a principal-agent relationship between Hiller and Fetzer is further corroborated by Churchill's intimate involvement in the transaction and the fact that, as the record reflects, Fetzer looked to Churchill for information and assistance.

The primary basis for the hearing officer's conclusion that Hiller was acting as Fetzer's agent was the fact that Hiller contracted to share the commission[6] on the sale of the house with Fetzer's broker, Churchill. By sharing the commission with Churchill, the hearing officer reasoned, Hiller became Churchill's sub-agent and thus Fetzer's agent as well as a principal in the transaction.

Whether a commission sharing arrangement, without more, would indicate a relationship in the nature of sub-agency, we need not consider,[7] for here the agreement on its face and the manner in which the parties acted in efforts to perform it, satisfy us that no sub-agency relationship was created between Churchill and Hiller.

■ Once the hearing officer had concluded that Hiller was the agent of Fetzer, he found that Hiller owed Fetzer a fiduciary obligation to disclose all material information, citing *Lestoque v. M. R. Mansfield, Inc.*, 36 Colo.App. 32, 536 P.2d 1146 (1975); *Koller v. Belote*, 12 Wash.App. 194, 528 P.2d 1000 (1974); *Travagilante v. J. W. Wood Realty Co.*, 425 S.W.2d 208 (Mo.1968); *Utlaut v. Glick Real Estate*, 246 S.W.2d 760 (Mo.1952); *Rattray v. Scudder*, 28 Cal.2d 214, 169 P.2d 371 (1945). We agree that an

6. The hearing officer also relies on the shared commission to show that Hiller's acts were unworthy. The officer cites *Levy v. Spencer*, 18 Colo. 532, 33 P. 415 (1893), for the proposition that a shared commission is against public policy because it has a tendency to induce a real estate agent to disregard, if not to sacrifice, the interests of the principal. However, in that case, the principals negotiated a trade of property, and the court voided that portion of the contract which gave each agent a share in

the commissions to be paid by both principals. In *Levy*, the court likened the objectionable provision to one where a single agent acts for both principals without their knowledge or consent.

7. Evidence of custom and practice in the real estate brokerage business, and rules of the Colorado Real Estate Commission, which might provide important guidance on this question, are not contained in the record in this case.

agent has a fiduciary duty to his principal to disclose material information. *See also Circle T. Corporation v. Deerfield*, 166 Colo. 238, 444 P.2d 404 (1968); *Holland Realty Investment Co. v. State Department of Commerce, Real Estate Div.*, 84 Nev. 91, 436 P.2d 422 (1968). All of these cases, however, are quite different from the case before us: they involve a broker who violated his fiduciary duty to his principal because he was either an undisclosed principal or an undisclosed agent for a principal while acting as the agent for the other principal. Here, in contrast, Fetzer knew Hiller was acting on behalf of his wife as purchaser.

In determining that Hiller's acts were "unworthy," "incompetent," and "dishonest" in violation of section 12–61–113(1)(n) and (t), C.R.S. 1973, the hearing officer found that all of the allegedly improper acts of Hiller "do not meet the requirements of a person acting in a principal/agent capacity." The hearing officer made no factual findings that Hiller violated the statute other than those based on the erroneous legal conclusion that Hiller was Fetzer's agent. Because Hiller did not have a fiduciary duty to Fetzer, there is not substantial evidence in the record to support the suspension of his license. *See Seibel v. Colorado Real Estate Commission, supra.*[8]

Judgment reversed and cause remanded to the district court for disposition consistent with this opinion.

ERICKSON, J., does not participate.

---

8. The court of appeals has held that "... where a real estate broker is dealing in real estate for his own account, the Colorado Real Estate Commission has jurisdiction over his acts and can suspend or revoke his license for proven violations of the licensing statute or of the commission's rules. A broker can no more be allowed to violate the rules of the Real Estate Commission when purchasing property for his own account than he can when purchasing it for a client." *Seibel v. Colorado Real Estate Commission, supra*, 34 Colo.App. at 415, 530 P.2d at 1292. Here, as noted earlier, the hearing officer's conclusions that Hiller violated the statutes are predicated solely on the erroneous determination that Hiller was Fetzer's agent, and not on Hiller's activities as a purchaser or as agent for his purchaser wife.