**REAL EQUITY DIVERSIFICATION, INC., a Colorado corporation, Plaintiff-Appellee,**

v.

**Frederick V. COVILLE and Susan B. Coville, Defendants-Appellants,**

and

**Walpin & Co., Intervenor-Appellee.**

**No. 83CA0926.**

Colorado Court of Appeals,
Div. III.

March 26, 1987.

Rehearing Denied June 11, 1987.

Certiorari Denied (Colville) Nov. 2, 1987.

Karsh & Fulton, P.C., Alan E. Karsh, Denver, for plaintiff-appellee.

Burg and Wolfe, P.C., Charles D. Burg and Thomas J. Young, Jr., Denver, for defendants-appellants.

Girsh, Rottman & Bromberg, P.C. (on the briefs), William L. Bromberg, P.C., William L. Bromberg, Denver, for intervenor-appellee.

KELLY, Judge.

The defendants, Frederick V. Coville and Susan B. Coville, appeal from a judgment for specific performance of a real estate contract in favor of plaintiff, Real Equity Diversification, Inc. (REDI), and in favor of intervenor, Walpin & Co. (Walpin), for its broker's commission. REDI argues that the appeal is moot, while the Covilles contend, among other things, that the trial court erred in ruling that: (1) there was a meeting of the minds on the contract terms, (2) they were not allowed to amend their pleadings at trial pursuant to C.R.C.P. 15(b), and (3) Walpin was entitled to its commission. We affirm.

The Covilles contracted with Walpin to list an apartment complex in Denver for sale at a price of $525,000. Walpin procured four offers for the Covilles, including the one from REDI for $500,000. After some negotiation over the contract language and terms, the parties executed the contract.

The contract also provided that Real Equity Brokers (REB), REDI's in-house real estate firm, would receive 2.8% of the selling price, i.e., 40% of the listing broker's 7% commission. Although Walpin did not sign the agreement, it is uncontroverted that Walpin and REB were to split the commission.

The contract itself stated that Arthur Seely, REDI's president and agent for the purchase, was also REB's principal stockholder. At the parties' request, Seely was the principal draftsman of the sales contract. The Covilles thus had notice of this corporate interconnection and the intended disposition of the broker's commission. Seely did not, however, reveal to the Covilles that he estimated the value of the property to be nearly $100,000 more than the contract price or that he already had a prospective purchaser for the property.

Almost immediately, the Covilles became disenchanted with the contract. Following numerous disagreements, Seely notified the Covilles in writing that REDI was ready, willing, and able to perform under the terms of the contract. The Covilles nevertheless announced that they were refusing to proceed with the contract. REDI then filed suit for specific performance.

After entry of judgment by the trial court, the Covilles asked for a stay of execution of the specific performance judgment. The trial court set $500,000 and $65,000 corporate surety bonds to stay execution of REDI and Walpin's judgments respectively. The Covilles posted the $65,000 bond, but asserted that they were unable to post the one for $500,000. They then moved for supersedeas bond in this court, offering only the property as securi-

ty. We denied the motion, and the Covilles thereafter conveyed the property as required by the trial court judgment.

## I.

REDI argues that the appeal should be dismissed for mootness. The Covilles contend that they conveyed the property involuntarily under court order, and that an involuntary conveyance cannot defeat their right to appeal the trial court's judgment. We agree with the Covilles. *Reserve Life Insurance Co. v. Frankfather*, 123 Colo. 77, 225 P.2d 1035 (1950).

## II.

The Covilles contend that the trial court erred in concluding that there was a valid contract. We disagree.

The Covilles argue that they interpreted the contract provision which called for REDI to approve the terms of an all-inclusive deed of trust to mean that REDI was to take over certain underlying financing obligations. REDI asserts, instead, that an all-inclusive deed of trust, as commonly used and interpreted in real estate transactions, means that the seller remains obligated for the underlying financing. In seeking to avoid the contract, the Covilles argue that they are unsophisticated in real estate transactions and that if REDI is correct, their minds never met as to the meaning of the terms of the all-inclusive deed of trust.

The general rule is that if contracting parties ascribe different meanings to a material contract term which is ambiguous, there has been no meeting of the minds and no valid contract exists. *Sunshine v. M.R. Mansfield Realty, Inc.*, 195 Colo. 95, 575 P.2d 847 (1978). If, however, the evidence establishes that both parties originally attached the same meaning to the contractual term, and they later disagree on its meaning, the determination of the provision's meaning is a question of fact for the trial court. *Sunshine v. M.R. Mansfield Realty, Inc., supra*.

The court found from the evidence that the Covilles had executed an almost identical deed of trust when they originally bought the property, and they knew or should have known what obligations were commonly imposed by the instrument. Based on the evidence presented, the trial court did not err in concluding that there was a valid contract. We will not disturb that holding. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970).

## III.

During trial, the Covilles sought to amend their pleadings to add a breach of fiduciary duty defense. They contend that the trial court erred in refusing to allow them to amend their pleadings to conform to the evidence under C.R.C.P. 15(b). We disagree.

The plaintiff's chief witness, Seely, was in the business of buying and selling real estate. He testified on direct examination that, as president of REDI, he was aware *before* he executed the contract that the value of the Covilles' property was greater than the contract price. He stated that he and agents from REB had inspected the premises and that he had estimated the property value was nearly $100,000 more than he had offered for it. Seely also testified that he expected to make a profit if he sold the property and that he had an anticipated sale before he made the offer to the Covilles. Seely had not revealed this information in his deposition when questioned on the subject by the defendants' counsel; however, the Covilles did not pursue the issue and did not seek further information through other discovery.

Later in the trial, the Covilles called Seely as an adverse witness and elicited additional testimony about his estimate of the property's value. Seely also testified about his substantial ownership interest in REB, the broker that was to share in the real estate commission.

C.R.C.P. 15(b) states in part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause

them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment...."

■ If a party establishes a prima facie case encompassing additional issues, it may be error to refuse to allow an amendment to the pleadings. *See Francisco v. Cascade Investment Co.,* 29 Colo.App. 516, 486 P.2d 447 (1971).

■ Ordinarily, a motion under C.R.C.P. 15(b) to amend the pleadings to conform to the proof is made at the close of the evidence, and, when so made, amendment should be allowed only in cases where no reasonable doubt remains that the issue raised by the amendment has been intentionally and actually tried. "It is not enough that some evidence has been received germane to the issue sought to be raised." *Clemann v. Bandimere,* 128 Colo. 24, 259 P.2d 614 (1953).

The same principles are applicable when the motion is made, as here, during the progress of the trial. Hence, the underlying questions here are whether the contract and the evidence elicited from Seely at trial are sufficient to establish prima facie the existence of a fiduciary duty by REB to the Covilles, imputation of the duty from REB to REDI, and a breach of the duty which would operate as a defense to REDI's claim.

■ A real estate broker who acts as the agent of both parties to a contract for sale of real estate has a duty to make full, fair, and prompt disclosure of all facts which might affect the principals' rights or influence their actions. *Little v. Rohauer,* 707 P.2d 1015 (Colo.App.1985); *see also Hickam v. Colorado Real Estate Commission,* 36 Colo.App. 76, 534 P.2d 1220 (1975). "However, the establishment of an agency relationship does not stand or fall on a determination of whether a commission was to be paid [to the broker]." *Velten v. Robertson,* 671 P.2d 1011 (Colo.App.1983). And, the "mere payment of a commission is not determinative of an agency relationship" for the purpose of entering a summary judgment. *Victorio Realty Group, Inc. v. Ironwood IX,* 713 P.2d 424 (Colo.App.

1985). The question of the existence of an agency relationship is one of fact for the trial court. *Little v. Rohauer, supra.*

■ Here, the only evidence in the record which could be regarded as probative of an agency relationship between REB and the Covilles is the statement in the contract of the status of REB and Walpin: "Real Equity Brokers 2.8% Co-op." Seely testified that this figure represented 40% of the 7% commission. However, there is no evidence that such a phrase has any additional significance in the real estate profession, and we are unable to draw any inferences from it.

The other evidence in the record concerning the conduct of REB and Seely is as consistent with their relationship with REDI, the buyer, as it is with an agency relationship with the Covilles. Hence, we regard this case to be distinguishable on its facts from *Velten v. Robertson, supra,* and *M.S.R., Inc. v. Lish,* 34 Colo.App. 320, 527 P.2d 912 (1974). Thus, we hold that the mere existence of an agreement between a seller's broker and a buyer's broker to share a real estate commission does not, standing alone, establish an agency relationship between the buyer's broker and the seller so as to impose a fiduciary duty to the seller by the broker. Accordingly, we conclude that the trial court did not err in denying the motion to amend. *See Foster v. Feder,* 135 Colo. 585, 316 P.2d 576 (1957).

### IV.

The Covilles also contend that the trial court erred in granting Walpin its real estate commission for the sale of the property. In view of our disposition of the foregoing issues, we disagree.

■ A real estate broker who has a valid listing agreement with the seller is entitled to recover a commission when he produces a purchaser who is ready, willing, and able to buy the property on the terms set by the seller. *See Circle T Corp. v. Deerfield,* 166 Colo. 238, 444 P.2d 404 (1968); § 12–61–201, C.R.S. (1985 Repl. Vol. 5).

Since the trial court did not err in denying the Covilles' motion to amend their pleadings to include the breach of fiduciary duty defense, no imputation of breach may be attributed to Walpin. *See White v. Brock*, 41 Colo.App. 156, 584 P.2d 1224 (1978); *Frisell v. Newman*, 71 Wash.2d 520, 429 P.2d 864 (1967). Thus, since REDI was a prospective purchaser of the property presented by Walpin to the Covilles, we conclude that Walpin is entitled to its commission on the sale of the Covilles' property. Section 12–61–201, C.R.S. (1985 Repl. Vol. 5).

In view of the conclusions we have reached, it is not necessary to consider the other assignments of error.

The judgments are affirmed.

VAN CISE, J., concurs.

METZGER, J., dissents.

METZGER, Judge, dissenting.

I respectfully dissent as to Part III of the majority opinion, which holds that the trial court committed no error in refusing to allow the Covilles to amend their pleadings to add the defense of breach of fiduciary duty.

In February 1980, the Covilles granted Walpin and Company an exclusive right to sell listing for the property. That agreement authorized Walpin "to accept the assistance and cooperation of other brokers" and authorized it to collect seven percent of the selling price as a commission if it produced a ready, willing, and able purchaser. The contract between REDI and the Covilles specifically provided that REB, whose principal stockholder was Arthur Seeley, REDI's president, would receive a "2.8 percent co-op," which meant that REB would receive 2.8 percent of the selling price.

Reading these agreements together, and noting the active participation of REB in obtaining REDI as a purchaser and in preparing the contract, I find the conclusion inescapable that Walpin was the agent of the Covilles and that REB was Walpin's sub-agent; therefore, by definition, REB was an agent for the Covilles as well. *See,* e.g., *Velten v. Robertson*, 671 P.2d 1011 (Colo.App.1983).

Because REB was a real estate agent for the Covilles, it had a fiduciary duty to act with the utmost good faith and loyalty in their behalf. *McKinney v. Christmas*, 143 Colo. 361, 353 P.2d 373 (1960); *Lestoque v. M.R. Mansfield Realty, Inc.*, 36 Colo.App. 32, 536 P.2d 1146 (1975). This fiduciary duty included a requirement that REB make a full and complete disclosure of material facts, including not only Seeley's opinion that the property, listed at $500,000, could be re-sold immediately for a profit of between $100,000 and $125,000 but, more importantly, that Seeley had received an offer from a prospective purchaser for $591,000 before the closing date. *See Hiller v. Real Estate Commission*, 627 P.2d 769 (Colo.1981). *See also Velten v. Robertson, supra.*

As this court held in *Collins v. McClurg*, 1 Colo.App. 348, 29 P. 299 (1892):

"Where the confidential relation of principal and agent exists, the onus is upon the agent to show that the transaction was fair and equitable; that he gave all the advice within his knowledge pertaining to the subject of the sale and the value of the property; and that there was no suppression or concealment which might have influenced the conduct of the principal. It is the purpose of the courts to see that the agent, by reason of the confidence reposed in him by the principal, secures to himself no advantage from the contract, and when the transaction is seasonably challenged a presumption of its invalidity arises, and the agent then assumes the burden of making it affirmatively appear that he dealt fairly, and, in the richest of faith, imparted to his principal all the information concerning the property possessed by him."

*See also Sankey v. Cramer*, 24 Colo.App. 16, 131 P. 288 (1913).

C.R.C.P. 15(b) provides in pertinent part that the trial court shall allow amendment of the pleadings freely when the presentation of the merits of the action will be subserved thereby. It is an abuse of dis-

cretion for the trial court not to do so. *Francisco v. Cascade Investment Co.,* 29 Colo.App. 516, 486 P.2d 447 (1971). When the trial court admits evidence which could potentially change a party's complaint or defense on any particular issue, amendment of the pleadings should be freely granted. *Schwab v. Martin,* 165 Colo. 547, 441 P.2d 17 (1968).

I would rule that here the trial court abused its discretion in refusing to allow the Covilles to amend their pleadings to add the breach of fiduciary duty defense. The record disclosed a prima facie case of a breach of fiduciary duty that would operate as a defense to REDI's claim for specific performance. The evidence is undisputed that, although Seely freely accepted the Coville's money, he did not fully disclose either all he knew about this property or his actions in connection therewith.

Accordingly, I would reverse the judgment of the trial court and remand this cause for a new trial with directions to allow the Covilles to amend their pleadings to add the defense of breach of fiduciary duty.